DAVIS *v.* McLAULIN.

MALICIOUS PROSECUTION—PROBABLE CAUSE.

> On a payment of rent, a controversy arose between the tenant and defendant, the landlord. The tenant demanded a return of rent he had just paid, or a receipt. Defendant started to leave the premises, when the tenant assaulted him, and plaintiff, coming to the tenant's assistance, to prevent defendant from getting into the street, pushed him back. Defendant sued them by *capias* for the assault, and judgment was rendered of no cause of action. Plaintiff then sued for malicious prosecution. *Held*, that the court should have charged that defendant had probable cause for instituting the suit.

Error to Wayne; Hosmer, J. Submitted October 27, 1899. Decided December 21, 1899.

Case by William Davis against John D. McLaulin for malicious prosecution. From a judgment for plaintiff, defendant brings error. Reversed.

*James H. McDonald*, for appellant.

*James H. Pound*, for appellee.

GRANT, C. J. The plaintiff and his brother, John, were convicted of an assault and battery upon the defendant. After that conviction, defendant brought suit against plaintiff and his brother by *capias*. Trial was had, and verdict rendered of no cause of action. Plaintiff then instituted this suit for malicious prosecution, and recovered a verdict and judgment for $400. The court left it to the jury to determine whether there was probable cause for issuing the *capias*, and held that the conviction for assault and battery was conclusive of probable cause in the criminal case. It is insisted by the defendant that he fully and fairly stated all the facts in the case to his attorney,

that the same attorney was present upon the trial for assault and battery, and there heard all the facts and circumstances of the assault. After such information by the defendant, and the attorney's knowledge gained upon the criminal trial, defendant was advised by his attorney that he had a good cause of action for damages, and for issuing the writ of *capias*. The order to hold to bail was duly indorsed upon the affidavit for the writ. Both the plaintiff and his brother, John, testified upon this trial that they were witnesses in the criminal prosecution, and there stated all the circumstances of the case. Defendant was also a witness upon that trial, and gave his version of the transaction. In my judgment, therefore, it conclusively appears that defendant's attorney was in possession of all the facts in the case, both from the defendant and from the plaintiff and his brother. There is no testimony in this record to show that defendant did not truthfully state all the material facts to his attorney. The details of the trial brought by defendant for damages are not before us, and we have no means of determining the basis of the verdict of the jury. I think it conclusively appears in this record, from the testimony of plaintiff and his brother, that they were both guilty of an unjustifiable assault upon the defendant. Plaintiff's brother was a tenant of defendant, who, on the occasion of the controversy, went to the shop to collect the rent. John paid him $16. This was not the full amount of the rent due. John claimed that he had paid $4.50 for certain repairs, which he insisted made up the difference. Defendant denied his liability for repairs, and refused to allow it. Defendant had taken the money, and put it in his pocket, and started to go out the door without giving a receipt. John's version as to what happened is as follows:

"I said I wanted a receipt for the money, which he had already put in his pocket. He's always putting the money in his pocket first. Mr. McLaulin started out of the door. I said, 'You come back and give me a receipt for that money, or hand that money back.' He kept on moving,

and I jumped the counter just as he got to the doorway. I grabbed him. 'Now,' I said, 'you either give me that money back or give me a receipt.' Just as I grabbed him, he raised his hand and struck at me, and I struck him several times somewhere around the face. He kind of came down on his knees. I took him then by the shirt collar, and told him to come right in and give me a receipt, or else give me the money back. * * * This happened just outside the door. * * * McLaulin had some blood on him after we got through. His collar was fairly broken away."

During the conversation between John and defendant, plaintiff had entered the shop, and heard some of the dispute. Plaintiff admits that he ran after defendant to prevent his leaving. His testimony is as follows:

"The only thing I did was to prevent McLaulin from leaving the shop until that thing was settled. I did what I would do for any one that would come in and pick up any goods.

"*Q.* Tell us just what you did in preventing him from leaving the shop.

"*A.* I got between the sidewalk and him, and prevented him from backing off into the street. I stood in his way. I never hit him. I just stood in his way, and prevented him coming into the street.

"*Q.* What did you do? Push him back into the shop?

"*A.* Well, if he got against me, I was not going to let him push me back.

"*Q.* Did he come against you?

"*A.* Yes, sir. [Continuing:] I prevented him from getting away from the shop, but I did nothing but press against him; that is, I stood between him and the street. My brother was in front of him, trying to pull him back.

"*Q.* So that your brother, John, was pulling him into the shop, and you were pressing him in, and both of you had hold of him?

"*A.* I did not have hold of him. I may have put my hands on him to push him there, but I did not grapple with him, strike him, or grab him."

Under this testimony, plaintiff was guilty of an actual assault. Plaintiff and John had no legal right to assault and detain the defendant to compel him to either give a

receipt or surrender the money. If defendant was liable for the repairs, the rent was paid. If he was not liable, it was not paid. In either event, defendant lawfully retained the money, and the rights of the parties could have been adjusted in a civil suit. Resort to force was unnecessary, illegal, and unjustifiable.

The facts were undisputed. The question, therefore, was one of law for the court, and not for the jury. The court should have instructed the jury that defendant had probable cause for instituting the suit, and should have directed a verdict for the defendant.

Judgment reversed, and new trial ordered.

The other Justices concurred.