## BOYER v. BUGHER.

### (No. 631.)

Malicious Prosecution—Action For—Proof Required—Malice— Want of Probable Cause—Question For Court and Jury—Advice of Counsel—Evidence—Instructions — Witness — Cross- Examination.

1. To maintain an action for malicious prosecution, it is necessary to establish that the prosecution complained of was instituted without probable cause; that the motive in instituting it was malicious; and that the prosecution has terminated in the plaintiff's favor, as by his acquittal or discharge in the case of a criminal prosecution. The concurrence of a want of probable cause and malice is essential.

2. Legal malice as a ground for malicious prosecution is shown when it appears that the prosecution was instituted from any improper or wrong motive, and it may be inferred from the want of probable cause, though such inference is not a necessary one.

3. The want of probable cause necessary to sustain an action for malicious prosecution cannot be inferred from any degree of malice.

4. When, in an action for malicious prosecution, the existence of probable cause is established, the defendant is entitled to judgment.

5. The existence of probable cause for a prosecution is a mixed question of law and fact, for it involves a consideration of what the facts are and what may reasonably be deduced from the facts. If the facts are not in dispute the question of probable cause is for the court, but the jury are to pass upon disputed facts, under proper instructions.

6. When one takes the advice of counsel learned in the law before commencing a prosecution, and places before such counsel all the facts, and acts upon his opinion in good faith, proof thereof makes out a case of probable cause sufficient to defeat an action for malicious prosecution, provided the disclosure to counsel appears to have been full and fair, and not to have withheld any of the material facts.

7. While the advice of counsel honestly obtained and acted upon in good faith tends to rebut, in an action for malicious prosecution, the charge of malice in instituting the prosecution complained of, it does so principally for the rea-

son that it overcomes the inference of malice from the want of probable cause; but such advice, when acted upon in good faith, is held to amount to a complete defense to the action, chiefly on the ground that its effect is to establish the existence of probable cause.

8. In an action for malicious prosecution it is proper to direct a verdict for the defendant where, upon the undisputed facts, it appears that he made a full and fair statement of the facts to counsel, believing them to be true, and acted in good faith upon the advice of such counsel in instituting the prosecution complained of.

9. To entitle the defendant in an action for malicious prosecution to the protection of the advice of counsel as a complete defense, it is necessary for him to show that he had disclosed all the facts which he was bound to disclose; and if he withheld any such facts the dismissal of the prosecution for the reason that counsel had arrived at a different conclusion concerning the legal effect of a fact which he knew and had considered when advising the prosecution will not establish the defense based upon such advice.

10. A criminal prosecution for entering upon the land of another and severing from the soil a product growing thereon had been advised by the prosecuting attorney and other counsel, who afterwards caused the same to be dismissed on the ground that the alleged owner of the land was a mere homestead entryman without possession, a fact which was known to counsel and had been considered when advising the prosecution. *Held,* that the one making the criminal complaint was not protected in an action for malicious prosecution by the fact that it had been advised by counsel, and dismissed on the ground stated, unless he had made a full and fair disclosure to counsel of all the material facts, for counsel might not have advised the prosecution if they had known all the facts.

11. To establish the defense of advice of counsel in an action for malicious prosecution, it is not necessary to show that facts were repeated to counsel which the defendant knew was at the time within the knowledge of such counsel, where it appears that in advising the prosecution such facts were taken into consideration.

12. Where an action for malicious prosecution was defended upon the ground that the prosecution complained of had been advised by counsel; *held,* upon the evidence as to the disclosure of facts to counsel and bearing upon the

question of the good faith of the defendant in acting upon
counsel's advice, that a motion for a directed verdict in
favor of the defendant was properly overruled. (Beard,
C. J., dissenting.)

13. Within the meaning of the rule that there must have been
a full and fair disclosure of the facts to counsel to con-
stitute advice of counsel when acted upon a complete
defense to an action for malicious prosecution, it is neces-
sary that not only all the material facts within the prose-
cutor's knowledge shall have been communicated, but also
all the material facts which he could have ascertained by
the exercise of reasonable diligence.

14. In an action for malicious prosecution, where the defendant
claimed that he acted in good faith upon the advice of
counsel in making the criminal complaint, and there was
ample proof of malice without inferring it from the want
of probable cause, and evidence that all the facts had not
been disclosed to counsel; *held*, (1) That the jury were
properly instructed that the advice of counsel would be
no defense if the defendant did not state to counsel all of
the facts within his knowledge, or that he could have
ascertained upon reasonable inquiry, or if he made any
incorrect statement to counsel, or withheld any material
fact that he knew or by reasonable inquiry could have
ascertained. (2) That if the instruction as to communi-
cating facts which might have been ascertained upon rea-
sonable inquiry was not warranted, for the reason that
the defendant knew or had been informed of all the ma-
terial facts, it could not have misled the jury, and was
therefore not prejudicial. (Beard, C. J., dissenting.)

15. The necessity or propriety of giving an instruction in an
action for malicious prosecution, where advice of counsel
is relied on as a defense, that such advice is no defense
unless the defendant had stated to counsel all the material
facts which he could have ascertained by reasonable dili-
gence, as well as all the facts within his knowledge, must
largely depend upon the facts of the particular case.

16. In an action for malicious prosecution complaining of the
prosecution of plaintiff for unlawfully entering upon the
land of another and severing from the soil a product
growing thereon, evidence that prior to the prosecution
the plaintiff had stated to the register and receiver of the
land office, when on the land and in the presence of the
defendant, that he claimed the land as part of his home-
stead, and that the land officers recognized his claim to

the land and assured him that it was all right, was competent as tending to show the defendant's knowledge of such claim of the plaintiff and the recognition thereof by the register and receiver.

17. In an action for the malicious prosecution of plaintiff for unlawfully entering upon and severing from the land of another the product growing thereon, where the land in dispute was in possession of and claimed by the plaintiff as a part of his homestead, and defendant claimed that it was a part of the homestead entry of the one alleged in the criminal complaint to be the owner, the proper legal description of the land being a matter in dispute, the alleged owner testified as a witness for defendant that she had made a homestead entry, and she identified the receiver's duplicate receipt issued upon such entry, and thereupon the receipt was introduced in evidence. *Held,* that it was proper on cross-examination to interrogate the witness concerning her knowledge of the land embraced in her entry, and her intention as to entering the land occupied by plaintiff.

18. Error, if any, in admitting evidence which was not objected to is not a ground for reversal.

19. Where the plaintiff, who had been prosecuted for unlawfully entering upon and severing from the land of another a product growing thereon, testified, in an action brought by him for malicious prosecution, that while he was not a surveyor by profession, he was a practical surveyor and that the land was a part of his homestead according to a survey made by him, it was not error to permit him to testify as to the result of his survey; the proof being held sufficient as to his knowledge of the subject and experience in making surveys to justify the admission of the testimony, and, so far as it was material, the accuracy of the survey, and whether he acted upon it in good faith, were for the jury to determine.

[Decided January 12, 1912.]                    (120 Pac. 171.)

ERROR to the District Court, Johnson County; HON. CARROLL H. PARMELEE, Judge.

The material facts are stated in the opinion.

*E. E. Enterline* and *Hill & Griggs,* for plaintiff in error.

The plaintiff's testimony that at the time of his arrest he brought several witnesses with him to the county seat to

testify in his behalf and stating the amount expended for that purpose was incompetent and should have been excluded. The plaintiff was not authorized to take witnesses to the place of the trial at the time of his arrest and include such expenses in estimating the damages, since no process had been issued for such witnesses, and the case had not been set for trial. The testimony of the plaintiff and the officers of the land office relating statements made by the plaintiff and said officers in the defendant's presence while upon the premises in controversy, and prior to the plaintiff's arrest upon the criminal complaint, should have been excluded as incompetent and immaterial. The plaintiff could not prove his title or right of possession by the declarations of government officers, nor can boundary lines be fixed and determined by declarations of such officers. The declarations of the register and receiver did not establish either the plaintiff's title or that his claim was in good faith. The cross-examination of Mrs. Compton with reference to her knowledge of the land, and what she intended by her homestead entry was improper. The plaintiff was erroneously permitted to testify as to surveys made by him on the lands in controversy. His competency as a surveyor was not established.

The motion for a directed verdict should have been given. It is well settled that advice of counsel learned in the law and reputable, given upon full information as to the facts, is a complete defense to an action for malicious prosecution, where it appears that the defendant acted in good faith upon such advice. (Staunton v. Goshorn, 94 Fed. 52; O'Neal v. McKinna, 116 Ala. 606; Staples v. Johnson, 25 App. D. C. 155; Young v. Lindstrom, 115 Ill. App. 239; R. R. Co., v. Brown, 57 Kan. 785; Mesker v. McCourt, (Ky.) 44 S. W. 975; Sandoz v. Veazie, 106 La. 202; Goldstein v. Foulkes, 19 R. I. 291; Shannon v. Sims, 146 Ala. 673; Wakely v. Johnson, 115 Mich. 285; Johnson v. So. Pac. Co., 107 Pac. 611.) Where one about to institute a criminal prosecution applies to the prosecuting officer, and in good faith states correctly and fully all the facts and acts

upon the advice of such officer, he cannot be held liable in an action for malicious prosecution. (Ry. Co. v. Wallin, 71 Ark. 422; Albrecht v. Ward, 91 Ill. App. 38; Sandoz v. Veazie, *supra;* Maynard v. Sigman, 65 Neb. 590; Magowan v. Rickey, 64 N. J. L. 402; Ambs v. Ry. Co., 114 Fed. 317; Hicks v. Brantley, 102 Ga. 264.) And one who states the facts fairly and fully to the prosecuting attorney is not liable if such officer erroneously determines that the facts constitute a crime and advises the arrest. The prosecuting witness cannot be made responsible for errors of his attorney. (Warren v. Flood, 72 Mo. App. 199; Masserman v. R. R. Co., 28 Fed. 802; Teal v. Fissel, 28 Fed. 351; 1 Hilliard on Torts, 422, 437; Sebridge v. McAdam, 119 Cal. 460.) Where there is no controversy as to essential facts, the question as to whether there was probable cause for the criminal prosecution is one of law for the court and cannot properly be submitted to a jury. (Ry. Co. v. Smith, 55 Pa. 272; Turney v. Taylor, 56 Pa. 137; Hess v. Or. Ger. Bak. Co., 49 Pac. 803.) It clearly appears that the prosecuting attorney and associate counsel concluded to dismiss the criminal complaint solely for the reason that they had come to a different conclusion upon a legal proposition. The fact upon which the conclusion was reached was known by said counsel at the time the complaint was filed. The defendant seems to have disclosed all of the material facts, and in some instances the prosecuting attorney knew the facts without being informed thereof by the defendant. Instructions which were requested to the effect that the advice of counsel constituted probable cause and a complete defense should have been given.

It was error to instruct the jury that it was necessary for the defendant in order to rely upon the advice of counsel, as a defense to show that he had disclosed to counsel not only all the facts which were within his knowledge, but also all that he could have ascertained upon reasonable inquiry. (Holiday v. Holiday, 123 Cal. 26, 53 Pac. 42, 55 Pac. 793; Hess v. German Bak. Co., 31 Ore. 503, 49 Pac. 803.)

No brief for defendant in error.

Potter, Justice.,

This is a proceeding in error for the review of a judgment rendered upon the general verdict of a jury in an action for malicious prosecution. On or about the 15th day of October, 1908, the plaintiff below, Christopher C. Bugher, was arrested upon a criminal warrant issued by a justice of the peace and brought before said justice to answer a complaint filed by the defendant below, Mark A. Boyer, charging that on or about the 7th day of August, 1908, the plaintiff unlawfully, willfully and purposely entered upon certain lands of one Julia Compton and severed from the soil certain growing grass, being the product growing thereon, the property of said Julia Compton. The hearing was continued upon the application of the prosecuting attorney on account of the absence of witnesses, until some time in November. The plaintiff gave bail for his appearance, and at the time fixed for the hearing by the order of continuance he appeared ready for trial, whereupon the prosecution was dismissed by the prosecuting attorney and the plaintiff was discharged. Thereupon this action was brought, and it resulted in a verdict and judgment in favor of the plaintiff for $125 damages and costs. The section of the statute under which the plaintiff was prosecuted provides among other things that "whoever unlawfully enters upon the lands of another and severs from the soil any product or fruit growing thereon, the property of another," shall be fined in any sum not exceeding one hundred dollars, to which may be added imprisonment in the county jail for not more than three months. (Rev. Stat. 1899, Sec. 4995; Comp. Stat. 1910, Sec. 5839.)

It is undisputed that the only basis for the criminal charge against the plaintiff was the fact that on or about the date alleged in the complaint he had cut and removed the hay grown upon certain land generally referred to in the evidence as two contiguous forty-acre tracts or respectively as the north forty and the south forty, the larger

part of the meadow upon which the hay was cut being located upon the north forty. Although the hay was removed from the meadow, there seems to be some dispute as to whether it was removed beyond the boundaries of the forty-acre tracts aforesaid; the legal description of said tracts, or the land upon which the meadow is situated, being a fact in controversy. The land in question was and had been for many years in the exclusive possession of the plaintiff and had been inclosed by him, and with his family he had settled upon the same many years prior to 1908, and upon the south forty had erected a dwelling house in which he lived, barn, corrals and other improvements, and he also had thereon an orchard and garden. He had cleared and irrigated the land referred to as the meadow, and for many years had cut the hay grown thereon. He had constructed a fence approximately along the west line of the land and on the east side of a north and south county road, which fence, with others or natural barriers, brought the land within his inclosure. Some time prior to 1907 he entered as a homestead one hundred and sixty acres of land, apparently intending to include the land occupied by him as aforesaid. The land so entered consists of a tier of three forty-acre tracts which, for convenience, may be referred to as the north forty, the middle forty and the south forty, and another forty-acre tract adjoining the south forty on the east; and by United States patent dated August 21, 1907, the lands so entered were conveyed to him. On April 29, 1908, Mrs. Julia Compton, a step-daughter of the defendant, filed a homestead application for the entry of one hundred and sixty acres of land and received a receiver's duplicate receipt showing the payment of the fee and compensation of the register and receiver of the land office for said entry, but she was not in possession of any of such land at the time she filed her application, nor did she at any time have actual possession thereof prior to the termination of the criminal prosecution aforesaid. The land described in her entry adjoins on the west the north and middle forty-acre tracts

of the plaintiff's homestead, as the same is described in his patent; and the defendant claimed that the land upon which the hay in question had been grown and cut constituted the east half of the land embraced and described in her entry. In support of that claim the defendant relied upon a survey made by Mr. Frank Gatchell, the county surveyor, represented upon a plat introduced in evidence as defendant's exhibit one; said plat representing the county road and plaintiff's west line of fence as running north and south approximately through the center of the land embraced in the Compton homestead entry, and the two forty-acre tracts in question as the east half thereof. The plaintiff claimed that they were a part of his homestead, and he denied the correctness of said survey and plat; the specific point in dispute being the location of the boundary line between the plaintiff's homestead and the land entered by Mrs. Compton.

It is conceded in the testimony that there is more or less uncertainty and confusion in the surveys in that locality, for the reason that no stone or monument marking the government survey is to be found in the township within which the land is situated, and but one such stone or monument in the township south of it; and it appears that a petition for a re-survey by the government had been signed by the plaintiff and others. Mr. Gatchell testified substantially that while he could not state that his survey and the plat aforesaid were accurate, he believed the same to be approximately correct. The plaintiff claims to have a practical knowledge of the subject of land surveying, and testified that the result of a survey made by him of his homestead before making final proof corresponded as well as he could wish with the land he was in possession of; and that the survey shown on the plat aforesaid (defendant's exhibit one) placed the west boundary line of his homestead about fifty-four rods farther east than it should be located. According to his testimony, he believed his improvements aforesaid, including the hay meadow, to be located upon his homestead as described in his patent, but he stated that

it was impossible for an accurate survey to be made of these lands until a re-survey by the government; and he further stated that if such re-survey when made should show that his improvements are not on the land conveyed to him, he would hold the land which he had occupied and improved, if he had to split forties to do so.

Some time prior to 1907 plaintiff's house had been removed by him from its original location, and the defendant and two or three other witnesses testified that the plaintiff explained said act by the statement that he had moved the house so that it would be upon his own land; but the same witnesses testified that after its removal the house remained located upon the same forty-acre tract, though closer to the line claimed by the defendant to be the west line of plaintiff's homestead. The plaintiff testified that he made no such statement to the defendant or any other witness or person, and that no reason existed for the making of such statement, for he believed at all times that the house was upon his homestead. In the year 1904, for the purpose of preparing a plat to be filed with the state engineer showing the location of certain land embraced in a desert entry of the plaintiff's wife and a ditch constructed or proposed to be constructed for the irrigation of that land, the plaintiff furnished to Mr. Gatchell, the county surveyor, a rough pencil draft of a plat of such land and ditch, upon which was also indicated by the plaintiff the location of his homestead, the north forty-acre tract of which adjoined on the south the west forty of said desert entry, but such draft did not show the line of the fence aforesaid or the county road. That paper was introduced in evidence as tending to show that thereby the plaintiff had designated the location of his homestead substantially the same as represented upon defendant's exhibit one with relation to the land upon which the hay was cut. In connection with the said paper a certified copy of the plat made therefrom, as filed with the state engineer, and another plat for the same purpose and similarly filed, made by Mr. Gatchell from a survey of the ditch made by him, were introduced

in evidence; each of those plats showing that the headgate
of the ditch was located by measuring from the northwest
corner of plaintiff's homestead as described in his patent,
though there appears to have been a difference as to mea-
surement between the two plats of 230 feet, the plaintiff's
plat placing the headgate that much farther from said
corner than the Gatchell plat.   The plaintiff testified with
reference to his plat that it was not drawn from any
independent survey made at the time locating the northwest
corner of his homestead, but that he measured from the
northwest corner of the land occupied by him, which would
necessarily be the northwest corner of the land here in-
volved; and he claimed by his testimony that his plat so
prepared did not show the land occupied by his improve-
ments to be outside the boundaries of the land described
as his homestead.   Whether it did so or not depends some-
what upon the tracing of the course of Powder River, a
stream which pursues a winding course south and east of
the land in question and crosses some of the other tracts
claimed by the plaintiff as a part of his homestead.   The
course and location of the river was shown upon the plat
furnished by the plaintiff to Mr. Gatchell and also upon
defendant's exhibit one.   In our opinion there is enough
difference between them to have made it proper if deemed
material to submit to the jury whether the plat so prepared
by the plaintiff conflicted substantially with his testimony
concerning the relative position of the river and the land
occupied and claimed by him, and his belief as to the legal
description of the land upon which his improvements and
the hay meadow are located.

It appears that the defendant had at times resided upon
some land owned or claimed by his wife, situated about two
miles from the premises in question, and that for the period
of four or five years he had been familiar with these
premises.   It also appears that the relations between the
plaintiff and the defendant were not friendly.   The de-
fendant had been a witness in support of a contest instituted
by his nephew against the desert entry of the plaintiff's wife.

When and how that contest was decided does not appear, but it is shown to have been pending in July, 1908, and that during that month on one occasion for some purpose related to the contest, the register and receiver of the land office, accompanied by the defendant, visited the land involved, and that the plaintiff was also present; and it appears that said parties were also at that time upon the land here in question, and that a conversation occurred with reference to it. The plaintiff testified that he then pointed out to the register and receiver and the defendant the land claimed by him as his homestead, including the land here in controversy, and stated that he would hold the land occupied and improved by him even if it became necessary to split forties in the middle to do so, and that defendant replied: "I will show you different." He further testified that the register of the land office said "yes" to such statement and that the receiver stated: "Your place is where you claim it is until it is proven by the government. Your homestead here is all right. You don't need to worry about your homestead at all." The register of the land office testified as a witness in the case on behalf of the plaintiff and corroborated substantially his testimony as to the statement made by him as aforesaid and to the response made by the defendant, and he further testified that the defendant appeared at the time to be angry and that he applied an abusive epithet to the plaintiff. When the defendant was testifying as a witness he was interrogated on cross-examination with reference to the above mentioned conversation and he admitted that the plaintiff continually spoke of his homestead, and that he said that he would not recognize the Gatchell survey, and that he would hold the land upon which his improvements were located if he had to split forties to do so, but testified that plaintiff did not describe or point out what he claimed as his homestead; and he denied that either of the land officers had in any way on the occasion above referred to assented to the statement made by the plaintiff to the effect that when the land was re-surveyed he would hold the land which he had

occupied and improved. The defendant also testified that he had been acquainted with the premises in question five years and knew of his own knowledge that the plaintiff had resided upon it during that time, and that in one year prior to 1908 he had assisted in cutting hay for the plaintiff upon the meadow in question.

In August, 1908, Mrs. Compton, then residing in Buffalo, the county seat of the county wherein the lands are located, was informed by her brother that he had seen the plaintiff engaged in cutting the hay, with a rifle attached to the mowing machine, and that at that time the hay had been cut upon about four or five acres of the land. She thereupon requested the defendant to consult an attorney for the purpose of recovering the hay. The defendant consulted Mr. Griggs, the prosecuting attorney of the county, and the latter suggested that a civil suit would be too expensive, in view of the small quantity of hay that had then been cut, and advised the defendant to procure further information. In October of the same year, shortly before filing the criminal complaint, the defendant in the meantime having visited the premises and discovered that all of the hay had been cut upon the meadow and removed therefrom, again consulted Mr. Griggs, who then suggested and advised the criminal proceeding and prepared the complaint, requesting, however, that the defendant submit the complaint to Mr. Bennett, another attorney, who he would ask to assist him in the matter, stating as the reason for doing so that he was then very busy. The defendant took the complaint to Mr. Bennett and consulted with him about it, whereupon the latter also advised that the criminal prosecution would hold; and the defendant reported to Mr. Griggs what Mr. Bennett had said, and inquired if he should get Mrs. Compton to sign the complaint, but was advised that as he knew the facts he could sign it just as well as she could. He then took the complaint to the justice of the peace, signed and filed it and procured the issuance of the warrant. It appears that both Mr. Griggs and Mr. Bennett knew, whether the fact was communicated

to them by the defendant or not, that Mrs. Compton had merely filed upon the land embraced in her homestead entry and that she was not in actual possession thereof. It also appears that Mr. Griggs had previous information of the fact that some of the plaintiff's improvements, including his house, were upon that part of the land in question referred to as the south forty-acre tract, and that some time in the latter part of July, 1908, he had prepared a notice for another party acting for Mrs. Compton requiring the plaintiff to remove his improvements from the Compton homestead. Mr. Griggs testified that while he did not know of his own knowledge that such improvements were on the Compton homestead, he knew that there was a dispute in regard to that matter. It clearly appears that Mr. Bennett was called into the case merely for the purpose of assisting the prosecuting attorney and not as the employed attorney of the defendant; and also that the criminal proceeding was dismissed by the prosecuting attorney for the sole reason that he and associate counsel had come to the conclusion upon an examination of the authorities that the fact that Mrs. Compton had not been in actual possession of the land rendered it at least very doubtful or uncertain whether the act of the plaintiff in cutting the hay amounted to a violation of the statute as charged. A further fact should be mentioned that some time in the latter part of September the defendant, in company with Mrs. Compton and others, went upon the premises in question and within the plaintiff's inclosure for the purpose, as the defendant testified, of building a house thereon for Mrs. Compton, but they were ordered off the premises by Mrs. Bugher, the plaintiff being absent, whereupon they withdrew. Their intention appears to have been to locate Mrs. Compton's house within the plaintiff's said inclosure not more than one hundred and fifty yards from the plaintiff's house and in the immediate vicinity of some of his other improvements.

1. It is contended that as the criminal prosecution was dismissed for the reason that Mrs. Compton had not been

in possession of the land, and not because of the discovery of any facts previously unknown to counsel or not communicated by the defendant, that the advice acted upon by the defendant constituted a complete defense to the action. And at the conclusion of the evidence counsel for the defendant orally moved the court to direct a verdict for the defendant on the ground that by the uncontradicted evidence the defendant acted upon the advice of the county and prosecuting attorney and other counsel in making the criminal complaint, and that at the time the complaint was made the defendant made a full and complete statement of the facts within his knowledge to such prosecuting attorney. An exception was taken to the denial of that motion.

To maintain an action for malicious prosecution it is necessary for the plaintiff to establish: (1) That the prosecution complained of was instituted without probable cause. (2) That the motive in instituting it was malicious. (3) That the prosecution has terminated in the plaintiff's favor, as by his acquittal or discharge in the case of a criminal prosecution. The concurrence of a want of probable cause and malice is essential. Legal malice is shown when it appears that the prosecution was instituted from any improper or wrong motive; and it may be inferred from the want of probable cause, though that inference is not a necessary one. The want of probable cause cannot, however, be inferred from any degree of malice. When, therefore, the existence of probable cause is established the defendant is entitled to judgment.

The existence of probable cause involves the consideration of what the facts are and what may reasonably be deduced from the facts. Hence, it is a mixed question of law and fact. If the facts are not in dispute the question is for the court, but upon disputed facts the jury must be left to pass under proper instructions. (Cooley on Torts, 181.) In Stewart v. Sonneborn, 98 U. S. 187, 194, Mr. Justice Strong, delivering the opinion of the court, quoted approvingly the following statement of the doctrine found in Sutton v. Johnston, 1 T. R. 493: "The question of probable

cause is a mixed question of law and of fact. Whether the circumstances alleged to show it probable are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law." And the learned justice continued the discussion of the question by saying: "It is, therefore, generally the duty of the court, when evidence has been given to prove or disprove the existence of probable cause, to submit to the jury its credibility, and what fact it proves, with instructions that the facts found amount to proof of probable cause, or that they do not. (Taylor v. Williams, 2 Barn. & Adol. 845.) There may be, and there doubtless are, some seeming exceptions to this rule, growing out of the nature of the evidence, as when the question of the defendants' belief of the facts relied upon to prove want of probable cause is involved. What their belief was is always a question for the jury."

With reference to the province of the court and jury respectively in determining the existence or want of probable cause, the result of the authorities in this country is stated in 26 Cyc., pages 106-109, as follows: "Primarily what constitutes probable cause is a question of judicial opinion. What facts, and whether all or sufficient undisputed facts, constitute probable cause is therefore determined exclusively by the court. The general rule is that where there is a substantial dispute as to what the facts are, it is for the jury to determine what the truth is and whether the circumstances relied on as a charge or justification are sufficiently established, and for the court to decide whether they amount to probable cause. According to the general, but not the universal, opinion, it is error to leave it to the jury not only to determine the facts but also whether they constitute probable cause; the court, not the jury, should draw that inference. The court may take a special verdict and determine the question or probable cause thereon as a matter of law, or it may instruct the jury hypothetically within the range of facts which the evidence tends to

establish as to what constitutes probable cause, and thus leave it to the jury to determine only the facts."

The question is well considered in a recent Washington case in discussing the contention that no want of probable cause was shown, notwithstanding that the court had sub- mitted the issue of probable cause to the jury to be deter- mined as a fact instead of deciding the question as a matter of law. We quote from the opinion: "No very definite rule can be laid down in this class of cases, for the issue of probable cause is sometimes to be decided as a matter of law; at other times, to be decided as a question of fact, as stated in some of the cases. The last hypothesis is not strictly accurate. When not determined as a matter of law, it is considered rather as a mixed question of law and fact; that is to say, the facts being disputed, the court should declare the law as applied to the facts of the particular case, and leave it to the jury to say whether the facts as found by them bring the party accused within the rule of probable cause." The statement of the law found in Cooley on Torts (3rd. Ed.) is then quoted in the opinion, including the following: "As to what facts are sufficient to show probable cause is a question of law for the court, and whether such facts are proved by the evidence is a question for the jury. 'The court should group in its instructions the facts which the evidence tends to prove, and then in- struct the jury that, if they find such facts to be established, there was or was not probable cause, and that their verdict must be accordingly.' It is not competent for the court to give to the jury a definition of probable cause, and in- struct them to find for or against the defendant according as they may determine that the facts are within or with- out the definition." As to the case then before the court it was said: "In the case at bar, the facts were disputed, and there is much room for difference of opinion. The instructions of the court were within the rule laid down by Judge Cooley. They are singularly explicit, and after defining probable cause, the court, by hypothetical reference

to the facts disclosed by the evidence, left it open to the jury to say whether there was a want of probable cause or not." In that case a judgment for the plaintiff was affirmed. (Finigan v. Sullivan, 118 Pac. 888.)

In the case at bar the defendant relied for a showing of probable cause upon the fact that he obtained and acted upon the advice of the prosecuting attorney and other counsel. The general rule is that when one takes the advice of counsel learned in the law before commencing a prosecution, and places before such counsel all the facts, and acts upon his opinion in good faith, proof of the fact makes out a case of probable cause, provided the disclosure appears to have been full and fair, and not to have withheld any of the material facts. (Cooley on Torts, 183; Burdick's Law of Torts, 254.) While the advice of counsel honestly obtained and acted upon in good faith tends to rebut the charge of malice in instituting the prosecution, it does so principally for the reason that it overcomes the inference of malice that might follow from the want of probable cause. But such advice when acted upon in good faith is held to amount to a complete defense to the action chiefly on the ground that it has the effect of establishing the existence of probable cause. As the question of probable cause is one for the court to determine when the facts are undisputed, it is proper to direct a verdict for the defendant where, upon the undisputed facts, it appears that he had made a full and fair statement of the facts to counsel, believing them to be true, and had acted in good faith upon the advice of such counsel in instituting the prosecution. (El Reno Gas & Elec. Co. v. Spurgeon, (Okl.) 118 Pac. 397; Davis v. McLaulin, 122 Mich. 393; King v. Power Co., 131 Wis. 575; Huntington v. Gault, 81 Mich. 144; R. R. Co. v. Dorsey, 59 Md. 539.) Had that been the situation in this case we would agree with counsel for plaintiff in error that the trial court committed reversible error in denying the motion for a directed verdict. But in our opinion the evidence was such as to require its sub-

mission to the jury under proper instructions, to find whether upon a full and fair statement of the facts the defendant had in good faith acted on the advice of counsel.

It is true that it is undisputed that the prosecuting attorney dismissed the criminal proceeding for the reason that he and assistant counsel had reached the conclusion that the fact that Mrs. Compton was not in possession rendered it improbable that a conviction could be secured, and that the fact that she had merely made a homestead entry without being in possession at any time was known to both counsel before they advised the prosecution. But that would not protect the defendant unless he had made a full and fair disclosure to counsel of all the material facts, for it does not follow from the fact that the prosecution was dismissed for the reason stated, that counsel would have advised the criminal proceeding if they had known all the facts, should it be found that the defendant had not fully and fairly stated such facts. It may be conceded that defendant was not bound to repeat to counsel facts which he knew to be already within their knowledge, it appearing that in giving the advice such facts were taken into consideration. But to entitle the defendant to the protection of the advice as a complete defense it was necessary for him to show that he disclosed all the facts which he was bound to disclose; and if he withheld any such facts, the dismissal of the prosecution for the reason that counsel had arrived at a different conclusion with reference to the legal effect of a fact which they knew and had considered when advising the prosecution would not establish the defense based upon such advice.

Although the plaintiff offered no evidence to show what facts were or were not disclosed by the defendant to his counsel, there is a substantial conflict in that particular between the testimony of the defendant and that of Mr. Griggs, the prosecuting attorney. It is clear that all the material facts within the knowledge of the defendant were not disclosed by him to Mr. Bennett and that his defense

depends mainly upon what he told Mr. Griggs. He was, however, advised by Mr. Bennett in effect that the success of the criminal prosecution would depend upon the good faith of the plaintiff in cutting the hay. We quote the following from Mr. Bennett's testimony: "I asked him about the premises, whether he (the plaintiff) had reason to believe it was on his own land or knew it was on Mrs. Compton's. I wanted to get at that, and he (defendant) told me that he (plaintiff) had admitted several times that this was not on his homestead, and that Frank Gatchell. had helped him survey it at one time and knew where the lines were. * * * I advised him that (the criminal complaint) would hold providing he (plaintiff) was not cutting in good faith and knew, or had reason to believe, that this was the land belonging to Julia Compton, and not his own." In view of the uncertainty in the surveys above alluded to, a fact which it might well be found upon the evidence that the defendant was acquainted with, and the further fact that the plaintiff had for many years resided upon and occupied the premises as a homestead, as defendant also knew, the statements made by the plaintiff in the presence of the defendant and the register and receiver of the land office in July, 1908, with reference to the land which he claimed as his homestead, and the remarks above quoted of said officials in response to such statements, if they were made as the plaintiff testified, were important and material. The defendant related no part of that conversation to Mr. Bennett, but he testified that he informed Mr. Griggs that the defendant had said that he would hold the land where his improvements were if he had to split a forty to do so. Mr. Griggs, on the contrary, testified that he was not informed of the fact that the plaintiff had so stated and that he did not hear of it until the trial of this case. If the defendant had stated the fact developed by the conversation that the plaintiff claimed not only that the description of his homestead as entered included the land in controversy, but also that regardless of that de-

scription he claimed this land which he had occupied and improved as part of his homestead, and the right to hold the same if necessary to split forties to do so, we would not be inclined to hold that it was necessary for him to repeat to counsel the words of the conversation or even state that the conversation had occurred. In the opinion of a majority of the court, if found by the jury that the plaintiff had so claimed and that the defendant knew it, the fact was material under the circumstances and ought to have been communicated to counsel. The defendant also testified that he told Mr. Griggs that the plaintiff had resided upon the premises for the period of five years; but Mr. Griggs testified that he had not been so informed. The latter, however, did testify that he was informed by the defendant that the plaintiff had his home upon and claimed a part of the south forty-acre tract.

Another fact in dispute, and this between the evidence of the plaintiff and the defendant, was whether the plaintiff had made previous statements to the effect that when he moved his house he did so for the purpose of locating it upon his own land, which statement, if made, would lead to the inference that he knew that the house was not on his land. The statement made by the defendant to Mr. Bennett that the plaintiff had admitted that the land in question was not his own, is supported only by the testimony of the defendant and some of his other witnesses to the effect that the plaintiff had made the statement above mentioned explaining the removal of his house. The plaintiff having positively denied the making of such statement, whether he did so state or not, was a question for the jury, and a belief in his testimony in relation to that matter would necessarily discredit the testimony of the defendant and the other witnesses, so that it might be found that the defendant had stated a fact to counsel which he did not believe, or had no reason to believe, to be true.

Not only were some of the facts disputed, but there is nothing in the evidence to show that the defendant had

disclosed to either counsel the fact, which we think it might be found that he knew, that it was impossible to make an accurate survey of the land in question, or that counsel were otherwise informed of that fact; or the fact that the plaintiff had stated to the defendant in the presence of the register and receiver of the land office that he would not recognize the Gatchell survey, and that he claimed as his homestead the land which he was occupying and had improved. Nor did it appear that the defendant informed either counsel that the receiver of the land office had said in his presence to the plaintiff that the latter's homestead was where he claimed it to be until proven differently by the government, and that he need not worry about his homestead at all. It is true that the defendant in his testimony denied that the receiver had made any such statement in the conversation referred to; but the truth of the matter was a question for the jury to determine; and we think if such statement should be found to have been made it was an important fact which ought to have been communicated to counsel, for it would have a tendency to show the plaintiff's good faith in cutting the hay, and his belief as to his right to do so, which the defendant had been informed was the main thing to be considered in determining whether the criminal complaint would hold.

We have alluded to the evidence as to the plat made by the plaintiff for the use of Mr. Gatchell in the preparation of a formal plat of Mrs. Bugher's desert entry and ditch, and explained that its effect as showing the knowledge or belief of the plaintiff concerning the lines of his homestead was a question of fact for the jury. Without referring to other facts and circumstances disclosed by the evidence bearing upon the question of the good faith of the defendant in acting upon the advice of counsel, we are satisfied for the reasons above stated that the motion for a directed verdict in favor of the defendant was properly overruled.

2. Exception is taken to the following instruction: "You are instructed that the defendant in this case alleges in his

answer that he made a full, true and correct statement of all the facts in his knowledge bearing upon the question of the guilt and innocence of the plaintiff of the crime alleged in the criminal complaint made and filed by the defendant Boyer against the plaintiff—I charge you that, under the law, if you find that the defendant did not state all the facts within his knowledge or that he could have ascertained upon reasonable inquiry, or that he made any incorrect statement to said attorney, or withheld any material fact that he knew or by reasonable inquiry could have ascertained—then and under such circumstances—the advice of counsel is no defense. You are further instructed upon this question, that the defendant is required in law to state all the facts within his knowledge that tend to show the innocence of the plaintiff of the crime charged as well as all the other facts in his knowledge that tend to show the guilt of the plaintiff, and if you believe from the evidence that said defendant Boyer did not state to the prosecuting attorney all the facts within his knowledge or that he could have learned by a fair and reasonable inquiry, that tended to show the innocence of the plaintiff of said alleged crime, then I charge you that the advice of said attorney is no defense."

That instruction was numbered 18 and was evidently intended as an explanation of the one immediately preceding it, which stated in general terms the effect of the advice of counsel as follows: "If the jury believe from the evidence that the defendant stated fully and fairly all the facts and circumstances in relation to the criminal prosecution to the prosecuting attorney of Johnson county, and to Alvin Bennett, attorney-at-law, or either of them, and that they or either of them advised him to institute criminal proceedings, and that the defendant in good faith acted upon such advice, then the plaintiff cannot maintain his action, whether such advice was correct or not and whether the defendant in the criminal prosecution was guilty or not."

The objection urged against the 18th instruction is that it erroneously required that the defendant should have

informed himself of, and disclosed, all the facts that he could have learned upon reasonable inquiry. There is a decided conflict in the authorities upon the question whether it is generally or ever proper to instruct that the advice of counsel constitutes a good defense in an action for malicious prosecution only when it appears that the defendant stated to such counsel all the facts which he could have ascertained by the exercise of reasonable diligence, as well as all the facts within his knowledge, relative to the guilt or innocence of the party claiming to have been injured by the criminal prosecution. The general rule as to the protection afforded by the advice of counsel has been stated. The conflict in the decisions with reference to such defense seems to relate to the meaning of the requirement ° that there must have been a full and fair disclosure of the facts to counsel. And the more specific rule has been adopted by several appellate courts in this country, that to make the disclosure full and fair it is necessary that not only all the material facts within the prosecutor's knowledge shall have been communicated, but also all the material facts which he could have ascertained by the exercise of reasonable diligence. (Carp. v. Ins. Co., 203 Mo. 295; Stubbs v. Mulholland, 168 Mo. 47; Aherns et al. v. Hoeher, 106 Ky. 692; Merchant v. Pielke, 10 N. Dak. 38; Hyde v. Greuch, 62 Md. 577; Cooper v. Fleming, 114 Tenn. 40; Evans v. Ry. Co., 105 Va. 72; El Reno Gas & Elec. Co. v. Spurgeon, (Okl.) 118 Pac. 397; Parker v. Parker, 102 Ia. 500.) It is declared by a few other courts that it is not necessary to show diligence in making inquiries, provided facts within the defendant's knowledge, or in the existence of which he had reasonable ground to believe, were communicated to counsel in good faith. (King v. Apple River Power Co., 131 Wis. 575; Dunlap v. Ins. Co., 109 Cal. 365; 42 Pac. 29; Hess v. Baking Co., 31 Ore. 503, 49 Pac. 803; Holliday v. Holliday, 123 Cal. 26, 55 Pac. 703.)

The English doctrine seems to be that when it is shown that the prosecutor had not taken reasonable care to inform

himself of the true facts in the case, the advice of counsel upon which he acted will not constitute a defense to the action of malicious prosecution. (Abrath v. Ry. Co., 11 App. Cas. 247-256, 55 L. T. 63, 16 Eng. Rul. Cas. 746; St. Denis v. Shoultz, 25 App. Rep. (Ont.) 131.) In the Abrath case it appeared that the results of inquiries on the part of the prosecutors were laid before counsel, who thereupon advised the prosecution. The trial court charged the jury that it was for the plaintiff to establish a want of reasonable and probable cause, and malice, and that it lay on him to show that the defendants had not taken reasonable care to inform themselves of the true facts of the case, and directed the jury to determine whether the defendants did take reasonable care to inform themselves of the true facts, and honestly believed in the case which was laid before the magistrates. The jury having answered both questions in the affirmative, judgment was entered for the defendants. The direction was held to be correct and the judgment rightly entered.

In the case cited from Ontario the facts were that the plaintiff was the tenant of the defendant's farm and that he had used some expressions showing his intention not to pay the defendant his rent and that he had made a bill of sale of the property on the farm to his sons. He stated these facts to his solicitor and upon his advice instituted a prosecution against the plaintiff for disposing of his property with intent to defraud his creditors. He had made no inquiry as to the date of the bill of sale or the circumstances under which it was given, and the date thereof was not known to the defendant or his solicitor when the information was laid. It turned out that the bill of sale had been made some months before the date of the lease, and was not therefore a transfer of property which could possibly have been made for the purpose of defrauding the defendant. The trial judge held that although the defendant had communicated to the solicitor the facts then known to him, yet that inasmuch as he had not taken reasonable care to inform himself of the date of the bill of sale, a fact

which could readily have been ascertained by inquiry, he was not protected by the advice of the solicitor, and therefore that there was no reasonable and probable cause. The appellate court said that the trial judge correctly ruled that the defendant was not protected by the solicitor's advice based upon what really was an incomplete statement of the facts, but intimated that if the fact was in dispute it would be for the jury to find whether the defendant had taken reasonable care to inform himself of the true state of the case.

The instruction here complained of seems to be sustained by the weight of authority; and in our opinion it expresses the better rule to be adopted in such cases. We do not think it can reasonably be held that such a rule will discourage desirable prosecutions for the violation of the criminal laws, through fear of liability to an action for malicious prosecution. Where the only motive is to bring a public offender to justice, a prosecutor is usually sufficiently protected by the necessity of showing malice, as well as a want of probable cause, in order to maintain the action for malicious prosecution, for, in the absence of actual malice or an indirect motive, it is not likely that a jury will infer malice from the want of probable cause unless the showing as to probable cause is so slight as to render the prosecution unexplainable except upon the theory that it was induced by malice. The proof of malice in the case at bar was ample without such inference. Such an instruction as the one now under consideration we hold, therefore, to be proper where the facts warrant it. The necessity or propriety of giving it must largely depend upon the facts of the particular case. If it was not warranted in this case for the reason that the defendant knew or had been informed of all the material facts, it could not have misled the jury and was therefore not prejudicial. Moreover, a similar instruction was given to which no exception was reserved, and as to which the record suggests, though not clearly showing the fact, that it was requested by the defendant. We refer to instruction numbered 16, which stated

that if the defendant communicated to counsel all the facts bearing on the guilt or innocence of the accused which he knew, or by reasonable diligence could have ascertained, then he is not liable.

·3.   It is contended that the court should have excluded as incompetent the plaintiff's testimony relating what he had stated in the presence of the defendant and the register and receiver of the land office as to the land which he claimed as his homestead, and the replies of the register and receiver respectively.   The testimony was competent and properly admitted as tending to show the defendant's knowledge that the plaintiff claimed the land in question as a part of his homestead and that the register and receiver of the land office had recognized that claim on his part and assured him that his homestead was all right and was where he claimed it was until proven differently by the government, and as tending also to show what the plaintiff's understanding or belief was as to his right to cut the hay in question.   If the plaintiff intended in good faith when making his homestead entry to describe the land actually settled upon and occupied by him, but through errors in government survey and no fault of his own had erroneously described the land, then, at least in the absence of intervening adverse rights, there would seem to be some authority for the assertion that he could hold what he had occupied and improved through a proper proceeding for that purpose, though we do not assume to decide what his rights might be under those circumstances.   (See Leitner v. Hodge, 5 Land Dec. 105; Jarvis v. Wash, 18 L. D. 297; Trainor v. Stitzel, 7 L. D. 387; In re Gill, 8 L. D. 303; U. S. Rev. Stat., Secs. 2369, 2370.)

4.   Mrs. Julia Compton was called as a witness on behalf of the defendant and testified upon her direct examination that she made a homestead entry April 29, 1908, on Powder River, Johnson County, Wyoming, and she identified the receiver's duplicate receipt which was issued at the time of making the said entry, whereupon such receipt was introduced in evidence.   On cross-examination, over the ob-

jection of the defendant on the ground that it was not proper cross-examination, counsel for plaintiff was permitted to interrogate her concerning her knowledge of the land embraced in her homestead entry, and her intention as to entering the land occupied by the plaintiff; and she testified that at the time she made her filing she knew where the land was but did not know the boundary lines thereof, nor that the land filed upon would include the premises occupied and improved by the plaintiff, and that she did not intend to cover by her filing the plaintiff's house and improvements. She also testified upon such cross-examination that she had never lived in the vicinity of the land, had passed along the county road previously referred to but once, and that she did not notice the instructions on the back of the duplicate receipt to the effect that the entry must be cancelled in case it was covered by any adverse settlement, application, entry, location, or other form of appropriation; and that she had not noticed any of the instructions and suggestions printed on the back of said receipt. In Henderson v. Coleman, 115 Pac. 439, it was said by this court that "the latitude of cross-examination is so largely within the discretion of the trial court that it must, as a general rule, appear to have been flagrantly abused before a verdict will be disturbed on that ground." We do not think there was any abuse of discretion in allowing the cross-examination complained of. The witness having testified that she made a homestead entry and identified the duplicate receipt describing the land embraced in such entry, which description defendant claimed covered the land occupied by the plaintiff and upon which the hay in question had been grown, in our opinion it was proper upon cross-examination to show the extent of her acquaintance with the land and what land she intended to file upon.

5. The plaintiff testified that at the time of his arrest he brought several witnesses with him to testify in his behalf and what his expenses attending the hearing of the criminal case amounted to, including the expense of said witnesses. It is contended that it was error to admit such

testimony. But we do not find that the evidence was objected to. It is argued that the plaintiff was not authorized to take witnesses to the place of trial at the time of his arrest, as no process had been issued to compel the attendance of such witnesses, and the case had not been set for trial; that there was no necessity for setting the case for trial at the time the plaintiff was arrested and brought before the justice, and that he had no right to presume that the case would be tried immediately upon his appearance before the justice. The question is not properly raised, but I very much doubt the correctness of the proposition that in order to recover such an expense in an action for malicious prosecution it was necessary for the plaintiff to have first ascertained whether the attendance of the witnesses would be necessary at the time of his appearance before the magistrate in custody of the officer, or to have had a subpoena issued for them. It would seem that the plaintiff had a right to assume at the time of his arrest that the case would be heard without delay, and it appears that the trial was not postponed upon his application.

6. The only remaining contention is that it was error to permit the plaintiff to testify concerning the survey which he made of his homestead without proof of his competency as a surveyor. While it appears that he did not claim to be a surveyor by profession, he testified that he was a practical surveyor, and we think the proof sufficient as to his knowledge of the subject and his experience in making surveys to permit him to testify what the result of his survey was. So far as it was material the accuracy of the survey, and whether the plaintiff had made and acted upon it in good faith, were for the jury to determine. While the title to the land was incidentally involved, it was not the ultimate fact to be adjudicated.

Finding no reversible error in the record the judgment will be affirmed.                    *Affirmed.*

Scott, J., concurs.

Beard, C. J., dissents.

BEARD, CHIEF JUSTICE, (dissenting).

In my opinion a new trial should be granted in this case. If the criminal prosecution had been commenced without the advice of counsel, I think the evidence on the question of probable cause for the prosecution was sufficient to sustain the verdict and judgment; but I am also of the opinion that the defense, that the prosecution was not only advised but suggested by the county and prosecuting attorney after he was in possession of all of the material facts in the matter, was established by the great preponderance of the evidence. When he advised the bringing of the action and when he prepared the information he was not only informed by Boyer but had previous information that Bugher claimed the land and that he had his garden, orchard and other improvements on land that Boyer claimed was included in the Compton homestead entry. He knew of the dispute and that both parties claimed to be entitled to the same land. He knew that Mrs. Compton was not and never had been in actual possession. He had prepared a notice in her behalf notifying Bugher to remove his improvements from the land she claimed under her entry. He was informed of the facts upon which Mrs. Compton based her claim; and the fact, if it was the fact, that Bugher had stated he would hold the land if he had to split a forty to do it, was but an assertion of his claim. And the statement of the register and receiver that his homestead was where he claimed it until the government proved otherwise was a mere opinion. The material facts appear to me to have been fully and fairly stated to the county attorney, and there is no question as to his advising the prosecution. Boyer did not go to him for the purpose of instituting a criminal action, but for advice. He followed the advice he received, and in my opinion on the evidence in this case he should be protected thereby and that the judgment should be reversed.