THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. ARTHUR WOODSON.

No. 15,685.  ( 100 Pac. 633.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Instructions.* Where the law relating to a particular subject is of vital importance in the trial of an action the court should clearly state in its instructions to the jury all the law necessary to explain fully the point in controversy, and not submit to the jury for their determination any of the legal questions involved.

2. ——— *Same.* Where upon the trial of an action it becomes necessary for the jury to decide whether or not an act conceded to be wrongful was justified by the existence of probable cause, the definition of that term, and the rules by which it must be ascertained, should be fully and clearly stated to the jury in the instructions of the court.

3. CRIMINAL LAW—*Arrest without a Warrant—Unlawful Detention—Probable Cause.* A passenger, while quietly and peaceably seated on a railway-train, was arrested and imprisoned by the conductor of the train, without a warrant or other legal authority. The passenger afterward commenced an action against the railway company to recover damages for such false arrest and imprisonment. The sole defense made to the action by the railway company was that the conductor, at the time the arrest was made, had probable cause for believing that the passenger arrested had a short time before committed a felony, by feloniously cutting and stabbing a porter of that train with intent to kill him. The railway company requested

the district court to instruct the jury upon the question of probable cause, as stated in instructions presented. The court denied the request, and failed to give any instruction upon that subject. *Held*, error.

Error from Johnson district court; WINFIELD H. SHELDON, judge. Opinion filed March 6, 1909. Reversed.

## STATEMENT.

ARTHUR WOODSON, on June 27, 1905, was a passenger on a train of the Atchison, Topeka & Santa Fe Railway Company, having purchased a ticket at Kansas City, Mo., to Kiowa, Kan. The train left Kansas City between nine and ten o'clock that evening. Woodson rode in a chair-car. The conductor examined his ticket, punched it, and put a check in his hat, as is usually done in such cases. After the conductor had left the car Woodson, who was a stranger and unacquainted with the road, being tired and sleepy, concluded to take a berth in the Pullman if he would not be disturbed by a change of cars during the night. To ascertain the facts concerning this matter he followed the conductor to inquire of him. The next car in the rear was a Pullman, and the conductor was found in the smoking-room of that car engaged in looking over his tickets. Woodson stood in the door of this room and waited for the conductor to finish examining the tickets before interrupting him. While standing there the colored porter of the Pullman came into the car, and the following conversation, in substance, was had with Woodson:

Porter: Have you a ticket?
Plaintiff: No.
Porter: Do you want one?
Plaintiff: No.
Porter: What are you looking for?
Plaintiff: Looking for a good time.
Porter: You can find that further up in front.
Woodson then walked back toward the chair-car

which he had left.   The porter followed out to the platform, where an altercation took place between them, in which the porter got cut in the arm, whereupon the porter returned to the conductor and Woodson to his seat in the chair-car.   What occurred during the altercation on the platform is involved in some uncertainty. It was not witnessed by any one except the parties themselves, and they do not agree.

The jury found that Woodson stabbed the porter with a large knife.   The wound made was on the arm, about three-quarters of an inch deep, and the same in length.   Who began the altercation the jury were unable to determine.   The wound bled profusely, but did not interrupt the porter in the performance of his duties.   The jury were unable to find from the evidence that the stabbing was necessary to avoid death or great bodily harm on the part of Woodson, or that he had reasonable grounds so to believe, and the special questions calling for these facts were answered "Don't know."

The information which the conductor had concerning the altercation must have been obtained from the porter, which, if the same as his testimony given on the trial, would indicate that Woodson was the aggressor and had to be knocked down to avoid the further use of the knife.   Just what his information was does not appear. He was not a witness, and the porter did not state what he told the conductor.

Soon afterward the conductor arrested Woodson and placed him in charge of two men, who guarded him until the train arrived at Ottawa, where the conductor turned his prisoner over to some person there, with instructions to lock him up.   Mr. Woodson was taken to the county jail, and there confined for three days, when, on July 1, 1905, he was taken to Olathe, near which place the altercation occurred, and there a complaint was filed against him and a warrant issued, and he was arrested under the warrant.   A preliminary examina-

tion was held on the same day and he was bound over to appear at the district court at its next term. In default of bail he was placed in the county jail.

On September 15, 1905, Woodson was tried, acquitted and discharged. This action was commenced in the district court of Johnson county, June 4, 1906, to recover damages for false imprisonment. On January 14, 1907, it was tried, and the plaintiff recovered a judgment for $300 against the railway company, which brings the case here upon proceedings in error.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*C. W. Gorsuch, Chancy B. Little,* and *J. P. Hindman,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The arrest and detention of the plaintiff, prior to July 1, 1905, was without a complaint or warrant. When the arrest complained of was made the plaintiff was not engaged in the commission of any offense whatever. He was quietly seated in a chair, like other passengers.

The defendant interposed the defense that the conductor, when the arrest was made by him, had probable cause to believe that a felony had been committed, and this belief, if honestly and in good faith entertained, justified the arrest, whether the felony had been committed or not. As indicated by this issue, the pivotal question in the case was whether this alleged probable cause existed or not. This question could not be intelligently determined by the jury unless they understood what in law constitutes probable cause. It was the duty of the court to define this phrase clearly, so that the evidence could be easily applied to such definition by the jury. The only instruction given by the court upon this question, reads:

"If the plaintiff was a passenger on one of the pas-

senger-trains of the defendant company, and the conductor of said train arrested the plaintiff and removed him from said train at Ottawa, a station on said road, or removed plaintiff from the train and then caused his arrest and imprisonment, the defendant company would be liable for said arrest and imprisonment if said arrest and imprisonment was false; that is, wrongfully made under the circumstances of the case."

When is an arrest legally false or wrongful? When may a conductor on a passenger-train, without a warrant, rightfully imprison a passenger while such passenger is conducting himself in a quiet and orderly manner and there are no reasonable grounds to apprehend misconduct on his part? The answer given by the law to the last question is: When the conductor has probable cause for believing that the passenger has committed a felony, and acts in good faith upon such belief. What in a legal sense constitutes probable cause? What is a felony? These questions involve both law and fact, and are vital to the issue presented in this case. The jury are not supposed to know the law, and they should be clearly advised by the court as to the law which governs the case on trial. This was not done, but the law and the fact were both submitted to the jury for their determination. The railway company requested the court to give the following instructions:

"(3) You are instructed that if the plaintiff stabbed the porter on the Pullman car attached to defendant's train, with a large knife, he was guilty of a felonious assault upon said porter, unless said porter had first made an assault upon the plaintiff and from the nature of the assault so made by such porter upon the plaintiff there was reasonable grounds to believe that the said porter would immediately kill the plaintiff or do him great bodily harm, and the plaintiff had no means of escaping such death or great bodily harm, except by using said knife upon said porter."

"(12) You are instructed that there was probable cause for the arrest of the plaintiff, and your verdict will be for the defendant."

"(16) If the plaintiff assaulted the porter of the sleeping-car with a knife and wounded him, then that was probable cause and sufficient cause for his arrest and detention for trial."

It was probably not error to refuse this request, but if the instructions requested do not accurately state the law applicable to this case they are sufficient to indicate to the court that the defendant wished the law upon probable cause to be given, and stated what it claimed the law to be. The attention of the court was thereby called to this important feature of the case, and an instruction upon this point should have been given. There is nothing in the instructions given by the court which covers or refers to this matter. Instruction No. 13, standing alone, is calculated to lead the jury into a misconception, if not an entire disregard, of the important feature of probable cause. This instruction reads:

"Where the relation of a passenger and common carrier exists, and a servant of said carrier wrongfully inflicts an injury on the passenger by arresting him, or unlawfully removing him from the train, the carrier would be responsible for such unlawful arrest and unlawful act and its natural and legitimate consequences, regardless of the particular motive of such servant."

Under the facts shown in this case it appears that the plaintiff was a passenger. He was arrested by the conductor without a warrant. Apparently this was wrongful. The only justification presented is that the conductor acted in good faith, upon information which amounted to probable cause. Good motive is a material part of the defense. (26 Cyc. 30.) The last words of the instruction, "regardless of the particular motive of such servant," therefore seem misleading.

Other questions have been presented and discussed, but as they are not likely to arise again, and as the case can be otherwise disposed of, they need not be considered.

Because of the erroneous and misleading character of the instructions given, and the failure to instruct fully upon an important feature of the case, the judgment of the district court is reversed, with directions to grant a new trial and proceed in accordance with the views herein expressed.