# HENNING v. MILLER

(No. 1696; March 8, 1932; 8 Pac. (2d) 825)
(Rehearing Denied Sept. 29, 1932)

For the plaintiff in error there was a brief and oral argument by *R. R. Rose,* of Casper, Wyoming.

116

118

For the defendant in error there was a brief and oral arguments by *E. E. Enterline* and *W. B. Cobb,* both of Casper, Wyoming.

TIDBALL, District Judge.

This is an action for malicious prosecution. From a judgment in favor of the plaintiff, the defendant has brought proceedings in error. The parties will be referred to as they appeared in the court below in the malicious prosecution case, whether speaking of the action for malicious prosecution or of the criminal action out of which the malicious prosecution arose.

The defendant during the time in question was the owner and proprietor of the Henning Hotel at Casper, and the plaintiff was employed by him as bookkeeper, having begun such employment in October, 1927, and continuing as such until shortly before her arrest on January 31st, 1929. As such bookkeeper, she had charge of the books, and it was her duty to check up the proceeds from the various departments of the hotel, including the coffee shop, the cigar counter, and the various clerks' desks. All of the proceeds, whether in money or checks, from all of the departments of the hotel, came daily into her hands, and it was her duty from time to time to deposit such proceeds in one of the Casper banks. In making such deposits, the plaintiff always followed the custom of keeping and depositing each day's receipts separately; that is, plaintiff would deposit Monday's receipts on Tuesday, Tuesday's on Wednesday, and so on, except that on Monday she would have the receipts of the previous Friday, Saturday and Sunday, it not being customary to make a deposit on Saturday. However, in making the Monday's deposit, consisting of three days' receipts, plaintiff always kept each day's receipts separate and deposited each separately.

In the course of her employment as such bookkeeper, she received the entire proceeds of the business of the hotel for July 14th, 1928, amounting to $496.63; July 21st, 1928,

amounting to $1,203.38; and of August 20th, 1928, amounting to $351.52. Part of the proceeds of these three days was in currency and part in checks. The plaintiff made up the bank deposit slips in her office and made the deposits in the banks. She also had charge of what was known as the "house bank," consisting usually of a thousand dollars, kept on hand for use in the business, accommodation of guests, etc.

During the month of December, 1928, there having been some trouble between plaintiff and defendant, as hereinafter explained, plaintiff informed the defendant that she was going to leave his employment at the end of the year, and to have her books audited. During January, 1929, and prior to the middle thereof, either the defendant or his hotel manager, Fleming, had directed one T. C. Spears, a certified public accountant, to make a check-up of the plaintiff's books and of the bank deposits of the hotel.

About this time, the defendant left for Denver, and during his absence the check-up was made by Spears, and about the middle of January, 1929, Fleming, the hotel manager, called the defendant at Denver by telephone and told him that Spears had advised him, Fleming, that the check-up made by him of the cash sheets, bank deposit books, bank statements, and duplicate slips revealed the fact that the receipts of the hotel business for July 14th, July 21st, and August 20th, 1928, had not been deposited in the bank. In this telephone conversation, Fleming advised the immediate commencement of criminal proceedings against the plaintiff. The defendant, however, told Fleming to consult further with Spears and to consult defendant's attorney, and not to do anything until defendant returned to Casper. After this telephone conversation, Fleming conferred with Spears and with defendant's attorney. He also conferred with the Deputy County and Prosecuting Attorney, Dunsworth, in the latter's office.

About the middle of January, 1929, defendant returned to Casper, and had a conference with Spears. At this con-

ference, Spears delivered to defendant a copy of a "Statement of Discrepancies" prepared by Spears from his check-up, and told the defendant that he, Spears, had made a complete check-up of the receipts and deposits of the hotel business for the year 1928, and that neither the bank records nor the duplicate deposit slips showed that the receipts of July 14th, July 21st, and August 20th, 1928, had been deposited in the bank. The paper called the "Statement of Discrepancies" delivered by Spears to defendant indicated several shortages during the period covered by the check-up, including the shortages of $496.63 on July 14th, $1,203.38 on July 21st, and $351.52 on August 20th. The cash sheet entries, kept in the handwriting of the plaintiff, disclosed that she had received the proceeds of the business of the three days above mentioned, and the bank records failed to show the deposit of any of said sums, either in the Wyoming National Bank or the Casper National Bank, the two banks with which the defendant did business, and, in fact, no such deposits were ever made in said banks, nor were any of said sums ever delivered to the defendant. The evidence also shows that the bank checks turned over to plaintiff in the business of July 21st, 1928, and included in the total proceeds of said business, were taken by plaintiff to the bank and exchanged for currency. In this way, the total turn-in for the business of July 21st, amounting to $1,203.38, was all converted by plaintiff into money.

In the meantime, Spears and one Wilson, another public accountant who was assisting in the check-up, had had a conversation with plaintiff, on or about January 16th or 17th, 1929, in which conversation she acknowledged to them that she had received the proceeds of the business of July 14th, July 21st, and August 20th, 1928, and stated to them that she thought she had deposited all of this money in the bank, and that the bank teller might have gotten it. In that conversation, plaintiff asked Spears to make inquiry at the bank to ascertain whether or not there was an "overage," and Spears, complying with her request, inquired of the

cashier of the Casper National Bank and was told by him that there was no "overage" of any substantial amount on or about the dates mentioned.

It was admitted during the trial of the case that the proceeds of the three above mentioned days was never deposited by the plaintiff, and the cash sheet entries in plaintiff's handwriting showed that the total receipts of the business of the hotel from July 1st, 1928, to December 31st, 1928, exceeded the total deposits made in the two banks during the same period by $2,051.53, which amount is the exact total of the three missing deposits of $496.63, $1,203.38 and $351.52.

On March 9th, 1928, the plaintiff made out a Henning Hotel check for $500.00, payable to cash, with the notation on it in her handwriting, "For extra bank over Sunday," making a check stub and entering the check on the cash journal. Defendant signed the check and plaintiff took it to the bank on March 10th and received $500 in cash. This money was never redeposited in the bank.

Sometime between January 22nd and January 31st, 1929, Vincent Mulvaney, who was acting in certain matters as defendant's attorney, told the defendant that one Lottie Mulcahy, who had been employed by defendant as a waitress for some two years in the coffee shop, had contracted through plaintiff for the purchase of two and three-quarters units in a certain oil venture, for which Mrs. Mulcahy had agreed to pay $275; that on March 9th or 10th, 1928, plaintiff had told Mrs. Mulcahy to come to plaintiff's office in order that Mrs. Mulcahy might sign a check for $100 and receive from plaintiff $50 in currency, there being at that time due from Mrs. Mulcahy on the oil contract the sum of $50 and there being a like amount due from plaintiff; that about nine o'clock in the evening Mrs. Mulcahy went to plaintiff's office, where plaintiff wrote out, and Mrs. Mulcahy signed, a check for $100 to the person from whom they had purchased the oil stock; that plaintiff had asked Mrs. Mulcahy to come to her room, saying that she did not have

her money in the office but had it in her room; that plaintiff and Mrs. Mulcahy had gone to plaintiff's room on the fourth floor of the Henning Hotel; that while in the room, plaintiff took from her suit-case a roll of bills from which she gave Mrs. Mulcahy one $50 bill; that Mrs. Mulcahy had expressed wonder at plaintiff's keeping a large roll of bills in her suit-case in a room fronting on the street, and that plaintiff had told Mrs. Mulcahy that she did not keep a bank account but kept her money in $50 bills in a roll in her suit-case. The above is a statement of what Vincent Mulvaney told the defendant, and Mrs. Mulcahy communicated substantially the same information to defendant.

On or about June 20th, 1928, plaintiff made out a Henning Hotel check and presented it to defendant for signature, and defendant signed the check. On the following day, plaintiff took the check to the bank and cashed it and received on it $1,000, which was never redeposited in the bank. The check was entered on the cash journal by plaintiff and also on the stub.

During the year 1928, plaintiff loaned to one Flo Pullen $55. Later, without authority from defendant, she took $55 from the hotel "house bank" and paid it to herself, and put a ticket in the house bank indicating that Flo Pullen owed the house bank $55. This amount was never paid by Miss Pullen, and the ticket referred to remained in the house bank when it was turned over by plaintiff to a hotel clerk in January, 1929.

At the time plaintiff received the "house bank" from her predecessor upon assuming her duties as bookkeeper, it contained in cash and cash slips $1,000. At the time she turned it over to the hotel clerk in January, 1929, it contained in cash and cash slips only $948.06, leaving a shortage of $51.94. At the time the house bank was turned over to the hotel clerk by the plaintiff, it contained in plaintiff's own handwriting an itemized statement showing the contents of the house bank and showing the shortage of $51.94.

All of the above stated facts were either admitted to be true on the trial of the malicious prosecution case or were found by the jury to be true, and all of them were known by defendant before he instituted the criminal proceedings against the plaintiff.

The plaintiff testified on the trial of the case that the witness Bach had the combination to the safe and keys to the cash-box. This was denied by Bach. There is no finding of the jury concerning this matter, and we will assume for the purpose of this case that plaintiff's testimony in that respect is true.

After defendant's return from Denver, he took the matter of the above transactions up with the deputy prosecuting attorney and with his own attorney, and the deputy prosecuting attorney advised him that he should prosecute plaintiff. The evidence is somewhat uncertain as to just what facts defendant reported to the deputy prosecutor, and the jury found that he did not make a full and fair disclosure of all the facts known to him. We are not inclined to disturb this finding, although we believe all the evidence considered together shows that the prosecuting attorney's office had a pretty thorough knowledge of the case at the time the complaint was filed in the Justice Court and later when the prosecuting attorney filed a direct information in the District Court.

On January 31st, 1929, the defendant caused criminal proceedings to be instituted in Justice Court against plaintiff, charging her with the embezzlement of $1,203.38, the proceeds of the hotel business of July 21st, 1928. Later the county and prosecuting attorney filed an information directly in the District Court charging the plaintiff with the embezzlement of the same sum and dismissed the Justice Court proceedings. The case was tried upon this information, with the result that the plaintiff was acquitted.

In the trial of the malicious prosecution case, the jury found that plaintiff did not embezzle any money belonging

to defendant or to the Henning Hotel. The jury also found upon disputed evidence that sometime during the year 1928, the defendant made threats against the plaintiff that he would get even with her because she refused to give false testimony at defendant's request in a divorce action then pending between defendant and his wife; and, also at the time the shortages were discovered in the hotel business after the check-up by the public accountants and before the commencement of the criminal prosecution, defendant threatened to imprison the plaintiff if she failed to refund the shortages of July 14th, July 21st and August 20th, 1928.

The jury on the trial of the malicious prosecution case answered 102 interrogatories concerning the evidence, and, among them, found that the defendant acted maliciously in the institution of the criminal proceedings, he was actuated by actual malice, and that in causing the institution of the criminal proceedings against the plaintiff he had not acted in good faith, honestly believing her to be guilty of the crime of embezzlement. The defendant testified on the trial that he believed the plaintiff guilty when he instituted the criminal proceedings, and there is no other evidence in the case as to his belief in that respect except such as may be inferred from the facts known by defendant at the time he instituted the criminal proceedings, unless the threats made by defendant against the plaintiff be such evidence.

''To maintain an action for malicious prosecution it is necessary for the plaintiff to establish: (1) that the prosecution complained of was instituted without probable cause; (2) that the motive in instituting it was malicious; (3) that the prosecution has terminated in the plaintiff's favor, as by his acquittal or discharge in the case of a criminal prosecution. The concurrence of a want of probable cause and malice is essential. Legal malice is shown when it appears that the prosecution was instituted from any improper or wrong motive; and it may be inferred

from the want of probable cause, though that inference is not a necessary one. The want of probable cause cannot, however, be inferred from any degree of malice. When, therefore, the existence of probable cause is established, the defendant is entitled to judgment.'' Boyer v. Bugher, 19 Wyo. 463, 120 Pac. 171, 176.

In the case at bar, the prosecution of plaintiff for embezzlement was instituted by defendant and plaintiff was acquitted on that charge. This was admitted by defendant on the trial of the malicious prosecution action. The defendant, in the institution of the criminal action, was actuated by malice. That was found by the jury from the evidence, and the evidence on that point was in substantial conflict. So the only question for this court to determine is, was there probable cause for the institution of the prosecution for embezzlement?

Although there is evidence showing malice or a wrong motive for a criminal prosecution, the question of probable cause is for the court to determine when the facts bearing upon that question are not in dispute. When some or all of them are in dispute, the jury determines the facts in dispute and the court, from a consideration of the findings of the jury on the disputed facts, together with those facts, if any, not in dispute, determines whether probable cause existed for the institution of the action complained of. Boyer v. Bugher, supra; Turner v. Ambler, 10 Q. B. 254, 116 Eng. Repr. 98; Saunders v. Palmer, 55 Fed. 217; Roessing v. Pittsburg Ry. Co., 226 Pa. 523, 75 Atl. 724; Munns v. DeNemours, 3 Wash. C. C. 31, Fed. Cas. No. 9926; Crescent L. S. Co. v. Butchers Union etc. Co., 120 U. S. 141; Foshay v. Ferguson, 2 Denio (N. Y.) 617.

The question of probable cause must be determined as of the time that the prosecution was instituted. It depends upon the facts as they apparently existed at that time, and not upon the ultimate determination of the facts. As

stated by Judge Cooley in his "Cooley on Torts," Edition of 1878:

"The test of probable cause is to be applied as of the time when the action complained of was taken; and if upon the facts then known the party had no probable cause for action, it will be no protection to him that facts came to his knowledge afterwards that might have constituted a justification had he been aware of them. Neither is he justified if he knew the facts, but did not believe them."

The converse of this rule would also be true—if, upon the facts then known, the party had probable cause for action, he will be protected even though the facts as developed on the trial show there was no probable cause, if the party was unaware of them by the exercise of reasonable diligence at the time he instituted the action.

It therefore becomes necessary to decide whether the facts known to defendant at the time he caused the criminal action to be brought against the plaintiff on January 31st, 1929, were sufficient to constitute probable cause; bearing in mind that, though the action may have been maliciously begun, the defendant is protected if he had probable cause; for the law is too well established to admit of doubt that in order to maintain an action for malicious prosecution the plaintiff must establish at the trial a concurrence of malicious motive and want of probable cause on the part of defendant at the time the complained of action was instituted. Boyer v. Bugher, supra.

We are of the opinion that a person of ordinary prudence and caution, situated as was defendant, being confronted with the facts as they were manifest to him in January, 1929, would unhesitatingly conclude that plaintiff was guilty of embezzlement. It is not necessary to restate in detail here the facts that came to defendant's attention. They have been set forth above. The proceeds from defendant's business were all handled by plaintiff;

she was his bookkeeper, and her books showed the receipt by her of the different sums hereinbefore mentioned. She admitted their receipt. It was her business to bank the money. The money was gone and she had no explanation to offer except that the teller at one of the banks may have gotten it. It was admitted on the trial that the teller did not get the money, that it was never taken to the bank. Of course, someone else who knew the combination to the safe or had a key to the cash box may have been the embezzler. But there was nothing to so indicate either then or at the trial. Counsel for plaintiff seem to point the finger of suspicion at the manager, Fleming, but he was not there when the receipts of July 14th and 21st and August 20th disappeared. Defendant knew this. Defendant must have believed the facts presented to him were true. He could not have believed otherwise unless there were other facts known to him indicating that someone other than plaintiff was the guilty party. He denied the knowledge of such other facts and two trials, the criminal one for embezzlement and the malicious prosecution action, where all the facts were again gone into, failed to disclose any other facts known to defendant indicating that someone else got the money. So we conclude that the facts known by defendant and believed by him to be true were such as would induce an ordinarily prudent and cautious person to believe the plaintiff guilty of embezzlement. And such being the case, there was probable cause for the prosecution, unless the jury's finding that defendant did not believe the plaintiff guilty negatives such a finding of probable cause. It should be borne in mind that the finding of the jury was not that defendant did not believe to be true the facts presented to him when he caused the institution of the prosecution—the jury could scarcely have found that in the face of the evidence showing conclusively that they were true and that defendant had no reason to doubt their truth—but that defendant

did not believe plaintiff guilty. The whole matter sifts itself down to this proposition—that while defendant believed certain facts to be true which would justify an ordinarily prudent and cautious man in instituting proceedings against plaintiff, still defendant was not so justified because he, knowing these same facts, did not believe what an ordinarily prudent man would believe; and the proof of his lack of belief is that he threatened the plaintiff, once because she would not testify as he wished her to testify in his divorce case, and once when he threatened to put her in jail if she did not return the missing money. That, as we understand it, is the proposition.

The plaintiff relies upon the case of Franzen v. Shenk, 192 Calif. 572, 221 Pac. 932, 936. This case was decided by a divided court, four of the judges concurring in the majority opinion and Chief Justice Wilbur and two of the other justices dissenting. This was a case in which the defendant in the malicious prosecution action had brought insanity proceedings against the plaintiff, resulting in the discharge of the plaintiff. It appeared on the trial of the malicious prosecution case that before the institution of the insanity proceedings, defendant had threatened the plaintiff in much the same manner as in the case at bar, saying to her, "Remember what I am telling you. You had better keep still or I will put you where the bow-wows won't bark at you," meaning thereby, we presume, that he would cause her imprisonment. As we understand the case, the majority opinion holds that while the facts on which the defendant acted in instituting the insanity proceedings were such as would cause an ordinarily prudent and cautious man to believe plaintiff insane, the question whether the defendant honestly believed the plaintiff to be insane was a part of the element of probable cause, that the threat made by defendant against plaintiff, if found by the jury to have been made, would be evidence that the defendant did not believe the plaintiff to be in-

sane, and that, therefore, the question of probable cause should have been submitted to the jury for determination. Chief Justice Wilbur in his dissenting opinion, as we understand it, held that the threat, if made, would only go to the question of malice and would not be evidence that defendant did not believe the plaintiff insane; while the other dissenting judges apparently held that the honest belief of the defendant in plaintiff's insanity was not an element of probable cause at all but went only to the question of malice. We have made a rather exhaustive search of the authorities and have found no other case which holds that evidence of threats to imprison is evidence that the defendant did not believe the plaintiff guilty.

It therefore becomes necessary to discuss what is meant by probable cause as that term is used in a malicious prosecution action; and in considering probable cause it is necessary not to confuse but to keep constantly separated the questions of malice and of probable cause, for the determination of the question of malice is always for the jury, if there is any evidence of malice; while the question of probable cause is always for the court ultimately to determine, though disputed questions of fact regarding the ultimate question of probable cause are for the jury. However, it is, as in any other case, only disputed question of fact upon the issue of probable cause that may be left to the jury.

Probable cause has been many times defined in the decisions and by text writers, and these definitions, though differing in their wording, are substantially the same except as to one matter, and that is as to the belief of the prosecutor at the time he caused the institution of the action complained of. Some of the authorities refer to the necessity of a belief by the defendant in the guilt of the plaintiff, others of a belief in the facts on which the defendant relied in instituting the prosecution, and still

others of the belief of the defendant that he had probable cause for the prosecution, while still others omit any reference to the belief of the defendant and confine the question to what an ordinarily prudent and cautious man would believe.

Justice Holmes, in his book, "The Common Law," at page 140, says, in discussing what is meant by probable cause in a malicious prosecution action:

"But the standard applied to the defendant's consciousness is external to it. The question is not whether he thought the facts to constitute probable cause, but whether the court thinks they did. * * * On the one side, malice alone will not make a man liable for instituting a groundless prosecution; on the other, his justification will depend, not on his opinion of the facts, but on that of the court. * * * I cannot but think that a jury would be told that knowledge or belief that the charge was false at the time of making it was conclusive evidence of malice."

This statement of Justice Holmes is approved by the United States Supreme Court in the case of Director General of Railroads v. Kastenbaum, 44 Sup. Ct. Rep. 52, 263 U. S. 25, 27-28, 68 L. Ed. 146, where Chief Justice Taft says:

"The want of probable cause, certainly in the absence of proof of guilt or conviction of the plaintiff, is measured by the state of the defendant's knowledge, not by his intent. It means the absence of probable cause known to the defendant when he instituted the suit. But the standard applied to defendant's consciousness is external to it. The question is not whether he thought the facts to constitute probable cause, but whether the court thinks they did."

In the case of Bradshaw v. Waterlow and Sons, Ltd., L. R. (1915) 3 K. B. 527, it is said:

"The question of the honest belief of the defendant should not be left to the jury unless there is evidence of

the absence of such belief. * * * It is not a question of fact for them whether the defendants believed that they had good ground for indicting the plaintiff, but all the material facts being ascertained, it was for the judge to say whether the defendants had reasonable or probable cause for so doing."

Judge Cooley in his work on Torts, Edition of 1878, says, on page 182:

"A mere belief, therefore, that cause exists is not sufficient, for one may believe on suspicion and suspect without cause, or his belief may proceed from some mental peculiarity of his own; there must be such grounds of belief as would influence the mind of a reasonable person, and nothing short of this could justify a serious and formal charge against another. * * * And all that can be required of him is that he shall act as a reasonable and prudent man would be likely to act under like circumstances."

Chief Justice Tindall, says in the case of Broad v. Ham, 5 Bing. (N. C.) 722:

"There must be a reasonable cause such as would operate on the mind of a discreet man; there must be a probable cause, such as would operate on the mind of a reasonable man."

In Bacon v. Towne, 4 Cush. (Mass.) 217, 238, Chief Justice Shaw says:

"There must be such a state of facts as would lead a man of ordinary caution and prudence to believe and entertain an honest and strong suspicion that the person is guilty."

In Braveboy v. Cockfield, 2 McMull. (S. C.) 270, 274, 39 Am. Dec. 123, it is said:

"Anything which will create in the mind of a reasonable man the belief that a felony existed, and that the party charged was in any way concerned in it, is probable cause."

Chief Justice Redfield, in Barron v. Mason, 31 Vt. 189, has this to say:

"There is no necessary or even natural connection between probable cause and the want of malice. One may, and often does, act with malice, when there is probable cause, or may act without malice where there is no probable cause shown, but in neither of these cases is he liable to this action.   *   *   *   Proof of the want of probable cause is not sufficient alone to maintain the action, provided the defendant can satisfy the jury that in his conduct he acted in good faith and without malice, which is much the same thing as applied to this subject. For, although the word 'malice,' in popular language, is often used to indicate anger or vindictiveness, in the law it is held to import nothing more than bad faith, and, as applied to the subject of malicious prosecution, the want of sincere belief of the plaintiff's guilt of the crime for which the prosecution was instituted. The difference, then, between proof of probable cause and of malice consists chiefly in this: that probable cause has reference to the common standard of human judgment and conduct, and malice regards the mind and judgment of the defendant, in the particular act charged, as a malicious prosecution. If the defendant can show that he had probable cause for his conduct, that is, that from such information as would induce a reasonable and prudent man to believe the plaintiff guilty of a crime, he instituted the prosecution, he is not liable, whatever may have been his own personal malice for setting it on foot. Probable cause, in this sense, is a defense to the action, without regard to motive. To this point, he must show that he was told or knew of the existence of specific facts, which either would constitute crime or which, upon competent advice, he supposed would constitute crime.   *   *   *   But if the party fail in showing such ground of action as would have induced prudent and careful men to have believed in the plaintiff's guilt,

and to have instituted the prosecution, he may nevertheless, if he choose, show that in fact he did act upon what he at the time regarded as good cause either from common report or remote circumstances, such as excited suspicions in his mind to the extent of creating belief of guilt, although short of probable cause. If this were not so, then want of probable cause and malice would be equivalent terms, which the cases show they are not. The only distinction which can be supposed to exist in regard to them is that one is general and the other is particular; one has reference to the common standard, and the other to the mind and motive of the defendant.''

"It is perfectly clear that an absence of honest belief on the part of the prosecutor in the guilt of the accused negatives the existence of reasonable and probable cause,'' says the court in Still v. Hastings, 13 Ont. L. 322, 324, 9 Ont. W. R. 121.

"In the majority of decisions, probable cause is defined, in substance but with some verbal differences, as reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that accused is guilty of the offense with which he is charged.'' 38 C. J. 403.

In a great many of the decisions it is apparent that the courts have failed to clearly draw the line between malice and probable cause, but have considered the two together and have apparently considered belief in the facts relied upon and in the guilt of the accused as the same thing. For example, in Thienes v. Francis, 69 Or. 165, 169, 138 Pac. 490, 492, the court says:

"In the institution of a criminal action the prosecutor must believe in plaintiff's guilt in good faith. If it appears he has knowledge of facts which would exonerate the accused he cannot justify the proceedings upon the criminal charge in an action for malicious prosecution. * * * One having good reason to believe the law has been violated may in good faith, cause the arrest of the supposed violator, and be protected under the law from an action for damages. Yet, if a man institutes a prosecution against another for a crime of which he has no reason

to believe the person guilty, he cannot be influenced by good intentions in so doing. Hatred, revenge, or other improper motives, which in law are malice, must be the source of the prosecution.''

If the prosecutor has knowledge of facts which would exonerate the accused, as stated in the above excerpt, then, of course, it cannot be said that an ordinarily prudent and cautious person, knowing what he knew, would believe the accused guilty. And ''if a man institutes a prosecution against another for a crime of which he has no reason to believe the person guilty,'' he is not acting as a reasonably prudent and cautious man would act.

In Atchison, T. & S. F. Ry. Co. v. Woodson, 79 Kan. 567, 100 Pac. 633, the court says:

''The answer given by the law to the last question (when may a conductor rightfully imprison a passenger) is: When the conductor has probable cause for believing that the passenger has committed a felony, and acts in good faith upon such belief.''

Whether the court considers ''good faith'' a part of probable cause, or lack of good faith as malice, is problematical. In Bolger v. Laugenberg, 97 Mo. 390, 11 S. W. 223, 10 Am. S. R. 322, the court says probable cause is ''a belief in the charge or facts alleged, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence in the same situation''; here evidently treating belief in the guilt of accused and in the facts relied upon as the same thing.

We are of the opinion that the question of belief to be passed upon by the jury should be confined to a belief in the facts on which defendant relies to show probable cause. It would seem that if the question of probable cause is to be kept separate and distinguished from the question of malice, then in a case where the court determines that all the facts known to defendant and believed

by him are such as to create a strong probability of guilt to such an extent that the mythical man known in law as the man of ordinary prudence and caution, and known in philosophy as the man of the street, would conclude from knowing such facts that the suspected party was guilty—that ought to put an end to the juestion of probable cause. Of course, where the question as to defendant's belief in the facts on which he relies as justification comes in question, as where the facts and circumstances of the case throw doubt on that question, then actual malice on the part of defendant may be very material in determining that question; that is to say, the same evidence that establishes actual malice, such as evidence of threats, hatred or ill will and the like, may also throw considerable light on defendant's belief in the truth of the facts or alleged facts on which he claims he relied in instituting the action complained of.

It would seem that if a defendant in a malicious prosecution action honestly believed certain facts to be true, and they were the only facts of which he had, or by the exercise of reasonable inquiry would likely have, cognizance and they were such facts as would induce an ordinarily prudent and cautious man to believe a party guilty of crime, then the defendant should be held as a matter of law to have had probable cause for instituting the action. It is rather difficult to perceive, if a defendant is to be judged by comparing his actions with the supposititious actions of a reasonable man under like circumstances, how a court can say that even though the facts manifest to defendant and believed by him were such that a reasonably prudent person would be justified in acting upon them if believed by him, still the defendant, likewise believing them to be true, would not be justified in acting upon them. Some courts have said that even in that case the defendant does not have probable cause if he knows the party prosecuted to be innocent. But if defendant

knew at the time that the party against whom he had caused a prosecution to be instituted was innocent, then he knew facts that would cause an ordinarily prudent man to hesitate and desist from prosecution.

If the evidence, in addition to showing that the defendant' knew certain facts, and no others, and believed them to be true, and the court's conclusion that such facts, if believed, were sufficient to justify an ordinarily prudent and cautious man in entertaining a strong suspicion or belief that plaintiff was guilty of crime,—if, in addition to this, there must be a further finding of fact that defendant believed the plaintiff guilty, it would mean that in every malicious prosecution action, where actual or express malice is shown, the question of probable cause will become a question of fact for the jury and allow the jury to infer from malice that the defendant did not believe plaintiff guilty, yet all decisions hold that want of probable cause cannot be inferred from malice. If defendant did not believe plaintiff guilty of the crime he charged her with, then the prosecution, so far as defendant was concerned, was not in good faith, and hence was malicious; but to allow a jury to say that because it was malicious, there was no probable cause, would be to infer want of probable cause from malice, and would open the door to conjecture and speculation and cause anyone to long hesitate before he would make a criminal complaint against another no matter how strong the facts might be indicating guilt. We apprehend it was for this very reason that the courts concluded that the determination of probable cause should not be left to the jury. The decisions are without dissent that want of probable cause cannot be inferred from malice. It was so held by this court in Boyer v. Bugher, supra. Neither is evidence of malice competent to show want of probable cause. Hightower v. Union Savings and Trust Co., 88 Wash. 179, 152 Pac. 1015, Ann. Cas. 1918A;

Barton v. Woodward, 32 Idaho, 375, 182 Pac. 916, 5 A. L. R. 1090.

In the case at bar certain facts were known by Henning. They were such as to point the finger of suspicion at the plaintiff, strongly indicating her guilt. A reasonable man knowing such facts would have grounds for believing that plaintiff was guilty of embezzlement. Defendant must have believed these facts to be true, for they were true— were admitted on the trial to be true; he could not have doubted their truth, for they were in black and white on the books. They strongly indicate plaintiff's guilt. Under such circumstances are the jury to be allowed to say that defendant, knowing facts to be true which strongly suggested plaintiff's guilt, and from the knowledge of which an ordinarily prudent person would conclude plaintiff was guilty, yet defendant did not believe her guilty, because he threatened her, and is the court to conclude from such finding there was no probable cause? If so, then the question of probable cause becomes a question for the jury.

Our conclusion, then, is that in a malicious prosecution case, the question of the belief of defendant should be confined to the facts upon which he appears to have relied in instituting the prosecution or action, and then should be left to the jury only in case such belief is found by the court from all the evidence to be doubtful; that where it is doubtful whether defendant believed the facts to be true on which he claimed to have relied, evidence of threats made by defendant against plaintiff antedating the institution of the action complained of, may be considered by the jury in determining that question; but when in a malicious prosecution action, it appears to the court from a consideration of all the facts—both those that are not disputed and the findings of the jury on disputed facts—that at the time defendant instituted criminal proceedings against plaintiff, the facts known and believed by him, together with those he would in all

probability have discovered by reasonable inquiry, were all such that the court is convinced that an ordinarily prudent and cautious man, knowing and believing them, would strongly suspect or believe the party accused to be guilty, then there was probable cause and the court should end the trial at that point.

The case at bar is, in our opinion, such a case. Probable cause was clearly shown and, therefore, the trial court should have entered judgment notwithstanding the jury's findings.

The case is reversed, with directions to enter judgment for defendant.

*Reversed.*

KIMBALL, C. J., and RINER, J., concur.


## ON PETITION FOR REHEARING

*Per Curiam.*

The judgment of the trial court was reversed for reasons stated in the opinion that appears in 8 Pac. (2d) 825. Within the time allowed for making application for a rehearing defendant in error filed 5 copies of a paper entitled "petition for rehearing." Our rule 23 (42 Wyo. 536) says that an application for rehearing shall be by petition "briefly stating the points wherein it is alleged that the court has erred," and that the petition shall be accompanied by 5 copies of a brief "of the points and authorities relied on in support thereof." The paper filed in this case contains 15 pages of quotations from our opinion, statements of fact and argument. No authorities are cited. The application for rehearing does not meet the requirements of the rule, and might, perhaps, for that reason alone, be denied. See, Tuttle v. Roher, 23 Wyo. 318, 153 Pac. 27; Allen v. Houn, 30 Wyo. 186, 219 Pac. 573. We are willing, however, to consider the so-called petition as a combined petition and brief, for the purpose of commenting on one or two matters that seem to be the main grounds of complaint.

The judgment was reversed on the ground that the facts showed that plaintiff in error had probable cause for instituting the criminal prosecution. We understand that defendant in error concedes the law to be as stated in our opinion, but complains that the opinion did not recite all the facts. The opinion recites the facts that were either admitted or found by the jury to be true and known to plaintiff in error when he instituted the criminal prosecution, and which, in our opinion, showed probable cause for the prosecution. In our recital of the facts we stated (p. 827) that defendant in error obtained the cash on two checks, one of March 9, 1928 for $500 and the other of June 20, 1928, for $1000, and never redeposited the money in the bank. While the recital of these facts in the opinion is literally true, it is due to defendant in error to say that she explained her failure to redeposit the money by testifying that it was delivered by her to plaintiff in error on his request, and that the jury, in answer to a special interrogatory, found she did not appropriate the money to her own use.

There was much evidence introduced as the result of the effort of plaintiff in error to show that he had grounds for suspecting that defendant in error had been guilty of criminal conduct in several matters not referred to in our opinion. Some gold coins on hand for use as Christmas presents had disappeared. Some rent money had been collected and not accounted for. It was claimed that the check for $1000 was an alteration of a check for $100. The jury found in favor of defendant on the issues raised by the evidence as to these and other somewhat similar matters. We did not believe that the facts found by the jury on this evidence had any tendency to show want of probable cause for the criminal prosecution. Defendant in error now states no reason for holding that they had such tendency.

It seems to be feared that our opinion may be interpreted to mean that this court believes the defendant in error guilty of the crime for which she was tried and acquitted.

It is hardly necessary to say that the question of her guilt or innocence was not considered by us. We decided the case on the issue of probable cause, assuming, of course, that defendant in error was innocent of the crime, as found by two juries. If there is anything said in our former opinion which could be considered as an intimation that we believe defendant in error to have been guilty of the offense charged —which defendant in error in her petition for rehearing claims—we wish to state that no such intimation was intended. Plaintiff in error in his brief asked us to reverse this case on the ground that the evidence showed the defendant in error to be guilty of the crime charged. This we refused to do.

*Rehearing Denied.*