## HUBER, ET AL. v. THOMAS
(No. 1772; March 13, 1933; 19 Pac. (2d) 1042)

442

For the plaintiff in error, there was a brief by *S. S. Combs, E. E. Enterline* and *Madge Enterline,* all of Casper, Wyoming, and oral arguments by *Messrs. Enterline* and *Combs.*

444

For the defendants in error there was a brief and the cause was argued orally by *W. B. Cobb,* of Casper, Wyoming.

RINER, Justice.

This proceeding in error was instituted by the plaintiffs in error to bring before this court for review the record in an action commenced in the District Court of Natrona County by Eleanor M. Thomas, as plaintiff, against Paul Huber, Table Supply Company, a corporation, and Central Trading Company, a corporation, as defendants. The corporation last mentioned having been dismissed from the case, the action proceeded against the two remaining defendants with the result that plaintiff obtained a judgment against them entered upon the general verdict of a jury. The parties will hereinafter usually be referred to as aligned in the court below, or by their respective names.

On the 7th day of February, 1931, in the City of Casper, Wyoming, the Table Supply Company was engaged in the retail grocery business and Paul Huber was its manager. The business was of the type generally known as a "cash and carry" store, where customers themselves selected their purchases from the stock for sale and then paid for the articles as they passed employees of the Table Supply Company stationed for that purpose near turn-stiles at

convenient locations in the store. A man by the name of Walter R. Schroyer employed by Huber, had charge of the fruit and vegetable department of the company.

On the date aforesaid, Schroyer, in the Municipal Court of the City of Casper, verified a complaint against Mrs. J. C. Thomas, the plaintiff above named, charging her with a violation of certain provisions of an ordinance of that city, to-wit, that she, "willfully and unlawfully" secreted goods and chattels belonging to the Table Supply Company. Upon that complaint a warrant was issued and Mrs. Thomas, having a short time before been arrested and taken to the municipal court, was there required to give bail for her subsequent appearance to answer this charge. The case was tried on February 11, 1931, and being found not guilty, Mrs. Thomas was thereafter in due course discharged. Subsequently she brought this action for malicious prosecution against the defendants above named, which was concluded in the District Court as hereinbefore described.

Section 89-1705, Wyo. Rev. Stat. 1931 provides:

"No person shall be disqualified as a witness in any action or proceeding, civil or criminal, by reason of his interest in the event of the same, as a party or otherwise; and every person shall be in every such case a competent witness, except as otherwise provided in this article. But such interest or connection may be shown to affect the credibility of the witness. Any person who is a party of record in any civil action or proceeding, or any person for whose immediate benefit any such action or proceeding is prosecuted or defended, or his or its assignor, officer, agent, or employe, or the person who was such officer, agent or employe at the time of the occurrence of the facts made the subject of the examination, or in case a county, town, village, or city be a party, any officer of such county, town, village, or city, may be examined upon the trial of any such action or proceeding as if under cross-examination, at the instance of adverse party or parties or any of them, and for that purpose may be compelled, in the same manner and subject to the same rules for examination as

any other witness, to testify; but the party calling for such examination shall not be concluded thereby and may rebut the evidence given thereon by counter or impeaching testimony.''

At the trial, and during the course of the presentation of the plaintiff's case in chief, Walter R. Schroyer, who had been subpoenaed as a witness in the cause by the plaintiff, was called by her to the stand for cross-examination under the authority of the statute above quoted. He was then no longer in the employ of the Table Supply Company. As this examination of Schroyer progressed, he gave testimony more and more in aid of plaintiff's side of the issues in the case and adverse to that of the defendants. It is hardly possible to read his testimony thus given and not conclude that he was a witness in fact friendly to the plaintiff and hostile to the defendants concerning material and relevant matters in issue. When counsel for defendants was afforded an opportunity to examine this witness the trial court ruled:

''I do not understand that you have a right to go into anything except to clarify anything brought out on cross-examination.''

Thereupon counsel responded ''That is all I had in mind.'' When the latter thereafter undertook to interrogate Schroyer by leading questions, upon objection being made by plaintiff's counsel that this was improper redirect examination, the court further ruled:

''My understanding is that if a witness on cross-examination makes an ambiguous statement, or doesn't complete his statement, that you may clear that up, but that is all, he is called for cross-examination and you can't go into it.''

Whereupon counsel remarked:

"You are right, your Honor. It is necessary in this proceeding here to call this man as our witness. I would like for the court, if it is a proper procedure, to advise him that he should remain in court until we call him."

At the court's direction, Schroyer remained in attendance on the trial, and was thereafter called to the stand as a witness for the defendants. Towards the close of his testimony as such witness, their counsel sought to ask him questions in the nature of cross-examination, and apparently to lay a foundation for his impeachment. Plaintiff objected to this line of questioning as an attack by the defense upon their own witness, and her objections were sustained by the court. Defendants' counsel then offered to prove by Schroyer as a witness:

"That, had the witness, W. R. Schroyer been permitted to answer the question just asked he would have stated to the jury that on the afternoon of November 4, 1931, he told the said S. S. Combs that unless defendant Paul Huber paid him three hundred dollars by Monday, November 16th, that he would blaze him in court on this case; that he would not remember anything which would help defendants, and that he was in position to either make or break the Table Supply Company by his testimony."

This offer of testimony, upon plaintiff's objection, was excluded by the court and the ruling is assigned and argued as error.

In State Bank of Wheatland v. Bagley Brothers, 44 Wyo. 244, 11 P. (2d) 572, this court held that one who had been made a defendant in an action to foreclose a mortgage and who by his answer had admitted all of plaintiff's claims in the suit, was, although formally so, not an adverse party within the proper construction of Section 89-1705, supra, so as to authorize his cross-examination by the plaintiff. It was there pointed out that the true test of the right to call a party for cross-examination

under this statute was whether he was "actually" an adverse party to the one who invoked the law. So far as the language of the act is concerned, there is no good reason that we can see why the test of a party's right to call either the "person for whose immediate benefit any such action is prosecuted or defended, or his or its assignor, officer, agent or employee, or the person who was such officer, agent or employee at the time of the occurrence of the facts made the subject of the examination * * * as if under cross-examination" should not depend, as in the case of a party to the record himself, upon the actual fact whether the witness is adverse in a material and relevant sense to the party at whose instance he is put upon the stand. To adopt any other interpretation of the statute would be productive of the most incongruous result.

For example, if the law be construed so as to permit a cross-examination of the agent of the opposing party merely because of the fact of such agency, and without regard at all as to whether he is a hostile or a friendly witness, the strange spectacle may easily be presented of a party cross-examining a witness strongly biased in his favor in every way—a witness who in large measure widens and smooths his pathway to a verdict or a finding, but who nevertheless may become under the statute the subject of impeaching testimony at the whim of such party.

One of the customary methods of impeaching a witness upon cross-examination is by proving his general bad character for veracity. Section 89-1706 provides that:

"The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, but may contradict him by other evidence, and may also prove. that he has made, at other times, statements inconsistent with his present testimony; and this rule shall apply to both civil and criminal cases; but before such last mentioned proof can be given, the circumstances of the sup-

posed statement sufficient to designate the particular oc-
casion, as near as may be must be mentioned to the wit-
ness, and he must be asked whether or not he has made
such statements, and, if so, allowed to explain them.''

If impeaching testimony as to character were sought to
be employed by the party calling him under Section
89-1705, supra, relative to a witness disclosing himself on
material issues in the case to be friendly to such party, it
would seem to be in plain violation of both the spirit and
the letter of Section 89-1706 aforesaid. Under our view of
Section 89-1705, it being the later enactment, the only ex-
ception thereby produced, so far as Section 89-1706 is
concerned, would be in the instance of a hostile and ad-
verse party or witness whose bad character it would be
quite the usual practice to prove for the purpose of im-
peachment. The rule is that statutes in *pari materia* should
be compared and harmonized if possible, and

''if not susceptible of a construction which will make all
of their provisions harmonize, they are made to operate
together so far as possible consistently with the evident
intent of the latest enactment.'' Burton v. Union Pacific
Coal Company, 18 Wyo. 362, 107 Pac. 391, 397; 112 Pac.
841; 59 C. J. 1051-1053.

In the case before us it is most apparent that Schroyer,
in the course of his cross-examination, when called for
that purpose under the statute by the plaintiff, disclosed
his bias in her favor and his hostility to the defendants.
As previously stated, he was no longer in their employ.
For aught that appears in the record, he may have been
discharged under such circumstances as caused him to
possess bitter enmity towards the defendants. It is incon-
ceivable that plaintiff, by simply calling him to the stand
under the statute aforesaid, could, *ipso facto,* make a wit-
ness impressed with these characteristics the witness of
the defendants and not her own. Again, suppose that at

the time of the trial Schroyer had been in the employ and under the domination of the plaintiff. Should the bare fact that he had been an agent of the defendants "at the time of the occurrence of the facts made the subject of the examination" cause him to be regarded and treated as a witness for the defendants without taking into account his adverse character in fact regarding them? We do not think so, and we do not consider that the statute may correctly be thus construed. As we see it, it was never the intention of the legislature in enacting the law to produce such inequitable consequences. Courts always endeavor to place upon a statute such a construction as will not produce injustice or absurd results. 59 C. J. 970, 971, and cases cited.

We reiterate that in our opinion the true test under this statute of the right to cross-examine is whether the party, witness, officer, or agent, etc., thus called to the stand is *in fact* adverse to the one placing him there. When his hostile character concerning material issues becomes apparent in the case, whether by pleadings, preliminary examination, or otherwise, he should not be subjected to cross-examination under the statute by the party to whom he is not adverse. Necessarily in the administration of the law the trial judge will guide the matter in the exercise of a sound discretion.

In the instant case it is our opinion that the defendants, if they had insisted on that right, could have cross-examined Schroyer and could have placed in the record the testimony offered as above related for the purpose of impeaching his credibility. They did not do this. They acquiesced in the mistaken ruling made by the trial court that they had only the right to clarify the testimony previously given by Schroyer on his examination by plaintiff. They thereafter called him as their own witness. They were accordingly estopped in the trial from impeaching him in the same manner and as fully as they might, had

they treated him as a witness for the plaintiff. 28 R. C. L. 642; 40 Cyc. 2562; R. S. Wyo. 1931, Sec. 89-1706.

It is urged that the District Court erred in allowing plaintiff to prove by Schroyer that on numerous other occasions at the direction of Huber and with his knowledge and consent a number of people other than the plaintiff had been arrested in the store of the Table Supply Company for the theft of merchandise, had admitted their guilt and had escaped prosecution by payment or promise of payment to Huber of sums of money far greater than the value of the merchandise taken. The contention of the plaintiff appears to be that this evidence was admissible to show malice on the part of the defendants toward the plaintiff.

In Boyer v. Bugher, 19 Wyo. 463, 120 Pac. 171, this court said:

"Legal malice is shown when it appears that the prosecution was instituted from any improper or wrong motive."

See also Henning v. Miller, 44 Wyo. 114, 8 Pac. (2d) 825-831; and 38 C. J. 423, citing many cases, says:

"It has been held that malice may consist of any motive other than one to further the ends of justice or to punish an offender against the criminal law."

When it is recalled that Schroyer, on his examination by plaintiff, testified that Huber said to him concerning Mrs. Thomas: "We will not let her go for no five hundred dollars, she is worth more money," it seems to us that the testimony aforesaid as to extortions from other persons was relevant to show an improper motive on the part of the defendants in the prosecution instituted against plaintiff and as part of a scheme to take money wrongfully from the public who dealt with the Table Supply Company. It may be observed in passing that the witness

fixed no time as to when these transactions occurred. If they all transpired after the 7th of February, 1931, it is not easy to perceive how they would be relevant. No objection, however, seems to have been interposed on this ground.

Error is assigned that offers of proof by Huber as a witness for the defendants that he never told Schroyer relative to the plaintiff that "We won't settle with her for any five hundred dollars; she is worth more," and also that he never said to him that when he came on the witness stand he should not remember that he had been authorized to make arrests by the defendants, were excluded by the trial court. But at plaintiff's instance on calling Huber as if on cross-examination, the latter had previously denied that he made any such statements. Inasmuch as the testimony was already in the record, the court's ruling affords defendants no substantial ground for complaint.

In presenting her case to the court and before the defendants had introduced any evidence whatsoever in support of their side of the issues on trial, plaintiff offered the testimony of several witnesses to the effect that her reputation for honesty and integrity in the community in which she lived—Parkerton, in Converse County, Wyoming—was good. The testimony was objected to, and in one instance a motion to strike it out was made by defendants, on the ground that it did not appear that her reputation in this respect was known to them. The objection and motion were overruled and upon exception taken it is urged that this was error. We think it was. 38 C. J. 482-3, citing many cases, states the rule to be:

"However, according to the weight of authority, plaintiff may give evidence of his good character and reputation as a part of his case in chief for the purpose of establishing want of probable cause if his reputation was known to the defendant at the time the prosecution was

commenced, or was of such general notoriety that defendant will be presumed to have known it, but not otherwise.''

And 18 R. C. L. 53 says on the point:

"It is generally held that the plaintiff in an action for malicious prosecution is entitled to give evidence of his good character and reputation, and of the defendant's knowledge thereof at the time of the prosecution, as a circumstance tending to show want of probable cause, on the ground that when a person is about to make a criminal complaint against a citizen of previously known good character and reputation, it is reasonable that he should consider that fact with the other facts and circumstances in determining the question of the probability of the guilt of the accused. There is little dissent from this obviously sound doctrine."

See also McIntosh v. Wales, 21 Wyo. 397, 134 Pac. 274, Ann. Cas. 1916, Ch. 273. In Lewis v. Goldman, 241 Mass. 577, 136 N. E. 67, 24 A. L. R. 260, the reason for the rule is clearly set forth in the following language:

"This is an action for malicious prosecution. It was not error to exclude evidence of his good reputation offered by the plaintiff, there being no evidence and no offer to show that the reputation of the plaintiff was known to the defendant. Such evidence is admissible only when the reputation is known to the defendant. The reason is that, although commonly in civil cases evidence of reputation is not competent as bearing upon liability for a particular act, yet in an action for malicious prosecution the burden of proving want of probable cause lies on the plaintiff, and—
'' 'the same facts, which would raise a strong suspicion in the mind of a cautious and reasonable man, against a person of notoriously bad character for honesty and integrity, would make a slighter impression if they tended to throw a charge of guilt upon a man of good reputation.' Bacon v. Towne, 4 Cush. 217, 241.

"The probative value of evidence as to such reputation in a case like the present depends wholly upon knowledge of it by the defendant. Geary v. Stevenson, 169 Mass. 23, 32, 47 N. E. 508; McIntire v. Levering, 148 Mass. 546, 20 N. E. 191, 2 L. R. A. 517, 12 Am. St. Rep. 594."

The several answers suggested by plaintiff to this assignment of error would seem to be that we should assume and take judicial notice that the City of Casper and the community of Parkerton are "not so far apart but that the reputation which a person enjoyed in the one would be known in the other" and that defendants in the course of their defense themselves undertook to attack plaintiff's character and reputation by testimony relative to other acts of misconduct on her part of a nature similar to that involved in the charge made against plaintiff in the municipal court. There was no proof at all as to what plaintiff's reputation was in the City of Casper. It has a population, according to the last census, of 16,619. It is open to serious doubt that a person in business in that city should be presumed to know the reputation for honesty and integrity of every person in a city of that size who comes into his store. To indulge the presumption even to a greater extent by enlarging it to include a locality without the county where the merchant's business is located and he resides, and more than fifteen miles distant therefrom, is, we think, something we are not permitted to do.

The subsequent testimony of defendants' witnesses as to plaintiff's previous acts of alleged misconduct in defendants' place of business would hardly seem, in itself, to excuse the error in admitting the testimony on plaintiff's behalf above mentioned. No authorities are submitted by plaintiff for our examination on this point. However this may be, it appears from the record that the defendants had already, without objection, permitted plaintiff to introduce testimony in the record relative to her good character. Their objection and motion above

discussed were made subsequent to its introduction and concerned only the testimony of other following witnesses. It would seem that in such circumstances the error cannot be regarded as of a prejudicial character. See Cronberg Bros. v. Johnson, 29 Wyo. 11, 208 Pac. 446; 4 C. J. 974, 975, Sec. 2954.

At the close of the evidence in the case, we find in the record a stipulation made in open court by the parties to the following effect:

"It is stipulated and agreed by and between counsel that a special instruction on the question of probable cause need not be submitted to the jury."

The judge who tried the case merely gave as part of his instructions to the jury an abstract legal definition of probable cause for a criminal prosecution. It read as follows:

"Probable cause for a criminal prosecution is understood to be such conduct on the part of the defendants, in this case, as may induce the jury to infer that the prosecution was undertaken for public and not for private motives."

The giving of this instruction was objected and excepted to by the defendants and it is also urged as error. The record discloses that the court below did not group the facts which the evidence tended to prove and then instruct the jury that if they found these facts established there was or was not probable cause, nor was a special verdict taken thereon, and therefrom a determination made by the court of the question of probable cause as a matter of law.

In Boyer v. Bugher, supra, this court, quoting from 26 Cyc., pages 106-9, said:

"According to the general, but not the universal, opinion, it is error to leave to the jury not only to determine the facts but also whether they constitute probable cause;

the court, not the jury, should draw that inference. The court may take a special verdict and determine the question of probable cause thereon as a matter of law, or it may instruct the jury hypothetically within the range of facts which the evidence tends to establish as to what constitutes probable cause, and thus leave it to the jury to determine only the facts.''

From the opinion in Finigan v. Sullivan, 65 Wash. 625, 118 Pac. 888-889, with approval as a well considered case, the court also took the following excerpt:

''As to what facts are sufficient to show probable cause is a question of law for the court, and whether such facts are proved by the evidence is a question for the jury. 'The court should group in its instructions the facts which the evidence tends to prove, and then instruct the jury that, if they find such facts to be established, there was or was not probable cause, and that their verdict must be accordingly.' It is not competent for the court to give to the jury a definition of probable cause, and instruct them to find for or against the defendant according as they may determine that the facts are within or without the definition.''

Just what the stipulation recited above was intended to mean is far from clear. Counsel on both sides disagree as to its interpretation. Without the stipulation, the question of probable cause in the case was, under the authority of Boyer v. Bugher, supra, and Henning v. Miller, supra, erroneously submitted to the jury. They were allowed not only to find the ultimate facts, but also to find whether these facts constituted probable cause. The trial court evidently felt that by stipulating in the manner they did the parties intended to authorize the court to abdicate its function of determining whether or not probable cause in the case existed,—a function which for centuries ·in English jurisprudence has been the province of the trial court alone. The question whether they might properly do that is not presented, either in the briefs or the argu-

ment, and hence it is unnecessary to give it consideration here. Inasmuch as the court was apparently induced to disregard the rule of practice indicated in the decisions of this court, cited last above, by the act of the parties themselves, we should not be inclined to allow advantage of that fact to be taken here.

Recurring, however, to the general definition of probable cause aforesaid, given by the court to the jury, it will be readily seen that it does not square with the authorities cited by this court in Henning v. Miller, supra, authorities, too, which, as we read them, reflect the overwhelming weight of authority as to what constitutes probable cause in a case of this sort. The language of 38 C. J. 403 is there quoted to the following effect:

"In the majority of decisions probable cause is defined, in substance but with some verbal differences, as reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that accused is guilty of the offense with which he is charged."

18 R. C. L. 35-36, summing up the matter, says:

"A definition sufficiently exact to meet satisfactorily every possible test would be difficult, if not impossible, to furnish, for the complete legal idea expressed by the term probable cause is not to be gathered from a mere definition, but, notwithstanding the different wordings of the many judicial definitions before referred to, there seems to be sufficient substantial agreement among them to warrant the statement that the standard of conduct for beginning or continuing any proceeding, whether civil or criminal, is that of a reasonable or ordinarily prudent man placed in the same situation as the defendant. That is, if a reasonable man would have believed and acted under the circumstances as the defendant did, there would be probable cause; otherwise, not."

The definition given by the trial court to the jury seems to indicate that it was generally the function of the jury to determine in the case what was probable cause. This, of course, is not so. When the facts relied on to establish that element in the case are undisputed the question whether or not there exists probable cause is for the court. When these facts are in controversy then the jury must find what they are in truth and from them the court should determine the existence or nonexistence of probable cause in the case. Henning v. Miller, supra; Boyer v. Bugher, supra, and cases cited, where the manner in which this is done is clearly indicated. Also, it seems to us quite plain that a prosecution undertaken for public motives might nevertheless be without probable cause. The conduct itself of the defendants is not probable cause but it must be judged by what constitutes that element in an action of this kind. The definition given by the District Court would appear to be really a definition of malice only. 38 C. J. 423, supra. Whatever view may be taken of the stipulation aforesaid, it hardly authorized the court to give an incorrect definition of probable cause to the jury, and that having been done, we consider the error to have been prejudicial to the defendants.

We are not unaware that this definition employed in the instructions in the instant case was used by the trial court and referred to in Lewton v. Hower, 35 Fla. 58, 16 So. 616. In that case, however, no exception was taken to it, no assignment of error made concerning it, and no argument submitted to the Appellate Court questioning its correctness by the appealing party. The instruction seems to have been framed from some language used in the opinion in Ulmer v. Leland, 1 Greenl. (Me.) 135, 10 Am. Dec. 408, although there the word "court" is used instead of the word "jury," as set out in the instruction here. Somewhat similar language may be found also in Bitting v. Ten Eyck, 82 Ind. 421, 42 Am. Rep. 505. The

definition we are considering is also quoted in the note at page 691 to Graham v. Bell, 1 Nott & McCord (S. C.) 278, in 9 Am. Dec. 687. The remark in the note that "this statement of the law is borne out by" certain listed cases, thereafter given, evidently refers simply to the preceding part of the note, reading

"Whether the circumstances relied on to prove the existence of probable cause be true or not, is a fact to be found by the jury; but whether, if found to be true, they amount to probable cause, is a question of law."

An examination of the cited cases makes this clear. In no reported case we have been able to find has the language of the instruction at bar been approved as a statement of the law for the guidance of a jury.

The jury were also instructed by the trial court:

"The court instructs the jury that malice may consist of any motive other than a desire to bring a guilty party to justice. A prosecution is malicious when actuated by hostile or vindictive motive provided there is also a lack of probable cause, as is hereinafter explained. A prosecution instituted willfully and purposely, to gain some advantage to the prosecutor, or through mere wantonness, or carelessness, if it be at the same time wrong and unlawful, within the knowledge of the actor, and without probable cause, is, in legal contemplation, malicious."

This instruction seems to have been taken verbatim from the case of Eggett v. Allen, 119 Wisc. 625, 96 N. W. 803-805, where it was approved. However, there it also appears that the court gave an instruction as to what constituted lack of probable cause in the case, so that the phrase in the quoted instruction, "lack of probable cause as is hereinafter explained" was intelligible to the jury. In the case at bar, no such instruction seems to have been given. The jury were left to surmise only as to the meaning of lack of probable cause and a proper interpretation of the

instructions confused on a vital point in the case. When taken in conjunction with the incorrect definition of probable cause already mentioned the serious character of the error in submitting it is especially marked.

Other alleged errors are assigned and argued but as the case must return to the District Court for a new trial, and as it is unlikely that they will again arise in the form now presented, it will be unnecessary to additionally lengthen this opinion by discussing them. The outstanding questions in the case have, we believe, all been considered and disposition of them made.

For the errors indicated, the judgment of the District Court is reversed and the cause remanded with directions to grant a new trial.

*Reversed and Remanded.*

KIMBALL, Ch. J., and BLUME, J., concur.